## J. W. PINKERTON, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, February 5, 1906.**

1. **COMMON CARRIERS: Act of God: Concurrent Negligence: Probable Consequences.** The act of God which excuses the carrier must be the sole cause of the loss, and when its negligence mingles with the act of God as a co-operative cause the carrier is liable, provided the resulting loss is within the probable consequences of the negligent act.

2. ————: ————: ————: **Evidence.** Moreover, if the injury resulting from the act of God might be avoided by reasonable foresight the carrier would be liable; and so the question of whether a carrier became aware of an impending flood in time to have removed the destroyed goods by the exercise of ordinary care, is found to have been properly submitted to the jury on the evidence.

3. ————: ————: **Strike: Crowded Yards.** Where the carrier's employees have struck and its yards are crowded the defendant should be more careful as to the situation in which it places its patrons' property.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*R. T. Railey* for appellant.

(1)    The failure to ship the goods on the 23d was not the proximate cause of the injury complained of. The flood itself supervened and stood as the independent proximate cause of such injury. The court should therefore have given defendant's instructions numbered 2. Com. Co. v. Railway, 88 S. W. 117, 113 Mo. App. 544; Grier v. Railway, 108 Mo. App. 565; Herbert v. Wiggins F. Co., 107 Mo. App. 298; Fuller v. Railroad, 106 Mo. App. 394-5-6, l. c.; Saxton v. Railway, 98 Mo. App. 501, l. c.; Logan v. Railway, 96 Mo. App. 461; Atkinson v.

Railway, 90 Mo. App. 489; Killian v. Railway, 86 Mo. App. 476; Kirkpatrick v. Railroad, 71 Mo. App. 267; Hicks v. Railway, 46 Mo. App. 304; Brown v. Railway, 20 Mo. App. 223; Haley v. Railway, 179 Mo. 30; Warner v. Railway, 178 Mo. 125; Henry v. Railway, 76 Mo. 288; 3 Elliott on Railroads, sec. 1264; Empire, etc., C. Co. v. Ry., 135 Fed. 135. (2) As stated by this court, as well as by several others, in discussing this question, there is no evidence tending to show that the defendant was guilty of negligence in failing to anticipate the direful results of the flood in controversy. There was nothing therefore to submit to the jury, as the facts contemplated in instruction numbered 3 were practically undisputed. Said instruction numbered 3 not only properly declared the law, but the court should have gone further, sustained our demurrer to the evidence and directed a verdict for defendant. Com. Co. v. Railway, 88 S. W. 117, 113 Mo. App. 544; Grier v. Railway, 108 Mo. App. 565; Empire, etc., v. Railway, 135 Fed. Rep. 135.

*Cole, Burnett & Moore* for respondent.

(1) Now, in considering appellant's contentions, we must not lose sight of the fact that plaintiff's amended petition charged negligence generally, and that plaintiff made his case, and rested, without disclosing an act of God. If goods are not delivered at their destination in a reasonable time, a prima facie case of default is made out; negligence need not be alleged, and if alleged it need not be proved. Davis v. Jacksonville Line, 126 Mo. 78; Doan v. Railway, 38 Mo. App. 410-413-414; Cramer v. Traction Co., 87 S. W. 27. (2) There was substantial evidence of negligence in plaintiff's prima facie case. Where goods are badly damaged or broken

when delivered, that very fact tends to show great negligence on the part of the carriers, and the jury may so infer. Heck v. Railway, 51 Mo. App. 532; Flynn v. Railway, 43 Mo. App. 441-2; The Otis Co. v. Railway, 112 Mo. 631-2; Cash v. Railway, 81 Mo. App. 114; Livery Co. v. Railway, 105 Mo. App. 562. (3) It is the well settled law of this State that a demurrer to the evidence admits every fact which the jury might infer if it were before them, and if, taken as true, it makes out a case of actionable negligence the plaintiff is entitled to go to the jury notwithstanding the countervailing evidence of defendant. Moorman v. Railroad, 105 Mo. App. 715; Whitson v. Bank, 105 Mo. App. 617; Chinn v. Railway, 100 Mo. App. 583-4; Dodd v. Guiseffi, 100 Mo. App. 315; Boone v. Railway, 20 Mo. App. 235; Hance v. Express Co., 48 Mo. App. 179-185; Mineral Land Co. v. Ross, 135 Mo. 107; Seehorn v. Bank, 148 Mo. 265; Hendley v. Globe Co., 106 Mo. App. 27; Morelock v. Railway, 87 S. W. 5-7; Bank v. Hainline, 67 Mo. App. 489; Jenks v. Glenn, 86 Mo. App. 330. (4) After plaintiff made his case and rested without showing an act of God, it devolved upon defendant to present evidence bringing the case within one of the recognized exemptions from liability. And in doing so it must make out a case in which no negligence of its own appears. Davis v. Jacksonville Line, 126 Mo. 78; Davis v. Railway, 89 Mo. 350; George v. Railway, 57 Mo. App. 363; Nickey v. Railway, 35 Mo. App. 85; Gowling v. Express Co., 102 Mo. App. 375. (5) But when it made that showing it proved that its own negligence co-operated with the act of God. The strike did not excuse it, but on the contrary made it liable. Proving the strike was proving negligence. So held in a case involving an act of God. Read v. Railroad, 60 Mo. 207; Cleary v. Railway, 108 Mo. App. 436; 6 Cyc. page 446; 2 Redfield on Railways (6 Ed.), sec. 167, pp. 8 and 9; Schwab v. Union Line, 13 Mo. App. 163; Tucker v. Railroad, 50

Mo. 385; Faulkner v. Railroad, 51 Mo. 311; Dawson v. Railroad, 79 Mo. 301.

ELLISON, J.—The plaintiff shipped a lot of household goods over the defendant's road from Hannon, Missouri, a point south of Kansas City, destined for Polo in the same State. He charges that they were damaged and lost by defendant in negligently delaying them and carelessly and negligently handling them. Defendant sought to excuse itself by showing that the property was lost in an extraordinary and unprecedented flood. The judgment in the trial court was for plaintiff.

The property was partly lost and the remainder damaged at Kansas City, Missouri, in the great flood at that point in the latter part of May and first of June, 1903. In the case of Moffatt Com. Co. v. Railway, 113 Mo. App. 544, 88 S. W. 117, we considered a question of the liability of a freight carrier for the loss of freight in that flood. We there held that, though the flood was an act of God, that to excuse the carrier, "the act of God must be the sole cause of the loss or injury, and whenever the negligence of the carrier mingles with the act of God, as a co-operative cause, he is liable, *provided* the resulting loss is within the probable consequences of the negligent act; otherwise, it will be too remote and disconnected to be considered the proximate cause." We see no reason for departing from that case. It was but the application of a well-recognized rule of law, which has been stated by our Supreme Court. [Brewing Assn. v. Talbot, 141 Mo. 674; Holwerson v. Railway, 157 Mo. 216, 231; Warner v. Railway, 178 Mo. 125, 134.] The case of Haley v. Transit Co., 179 Mo. 30, is directly in point as to what should be considered to be caused by the negligent conduct. In that case, the servants of a street railway negligently carried the plaintiff a block beyond the point where she wished to leave the car, for stopping at which she had signaled. It was after dark and ice was upon the sidewalks. In walking back the dis-

tance of the block, she slipped and fell, receiving severe and lasting injury. The defendant was held not liable notwithstanding its negligence in carrying the plaintiff by: it being held that such negligence was not the proximate cause of the injury; that the injury was not the natural and probable consequence of the defendant's negligence or wrongful act, and was not such a result as ought to have been foreseen.

But in the Moffatt case, we recognized that, if injury from the act of God might have been avoided by reasonable foresight and care, liability would follow. And so the learned trial judge instructed the jury in this case, that if "the defendant became aware of the impending and approaching flood in time to have removed the goods to a place of safety by the exercise of ordinary care and diligence," it was liable for the loss. [Davis v. Railway, 89 Mo. 340, 347.] So, therefore, the question is: Was there evidence adduced which had a tendency to support the hypothesis thus submitted to the jury? An examination of the record satisfies us that there was.

Polo, the destination of the goods, was not on defendant's line of road, and it transferred them to a car of another line, which reached that place. Kansas City, where they were lost, was the transfer point. They left the point of shipment about one hundred and fifty miles from Kansas City on the afternoon of Wednesday, the 27th of May. It does not appear clearly in evidence just when they arrived in Kansas City, but defendant alleges in its answer that it was on the night of Friday, the 29th. At any rate, defendant was handling the car, in which they were, on Saturday forenoon and in the afternoon of Saturday they were transferred from defendant's car to the car of the connecting carrier and then abandoned on account of the flood, which at that time was too high for further movement of cars.

There was evidence, the tendency of which was to show that the flood worked its principal destruction in

what is known, in Kansas City, as the West Bottoms and that defendant's principal freight yards are located there. That what was known as local freight (such as plaintiff's), on arrival at Kansas City from the south, was left for a time at its Grand avenue yards, a place not in danger from the flood. That in the forenoon of Saturday, May 30th, the defendant switched the car with plaintiff's goods down to its yards in the West Bottoms. That then, about two o'clock in the afternoon, it transferred the goods to the connecting carrier's car as just stated. In the forenoon, defendant's agent saw that the water was up to and running in the street in front of the freight house and was higher than he had ever seen it. Indeed, he had never seen it high enough to reach the yards before that. He knew the water was steadily rising. Witness Connor, in charge of the Weather Bureau, stated that it rose rapidly and uniformly all day Saturday. At between one and two o'clock in the afternoon, it got too high for the movement of cars. In the forenoon, at this agent's request, all the switch engines were pulling cars from low to higher ground in the yards. And yet, at the same time, the assistant foreman of the freight depot was having cars brought down into the Bottoms. It is clear that defendant's agent knew of the extraordinary and dangerous condition of affairs at the freight house and yards on the morning of the 30th and that matters were getting worse continuously. It knew of its own crippled condition for handling cars and freight on account of the strike of most of its employees in that department, and yet it took the car with plaintiff's goods into such place of danger. The evidence tending to show these things amply justified the court in submitting the case to the jury on that question; and shows that it would have been error to have given a peremptory declaration that, as a matter of law, defendant was free from fault. There were other phases of the case relating to defendant's not getting the goods out of the West Bottoms after taking

them in, which we regard as sufficient to take the case to the jury, but what we have pointed out will suffice.

In the nature of the case, plaintiff could not himself know, in detail, what defendant did with the car containing his goods after its arrival in Kansas City. He has depended upon defendant's employées for an accounting of their conduct, and there are some matters not stated by them in terms. Thus, though we have said that the car was left for a time at Grand avenue station and then, in forenoon of the 30th, taken to West Bottoms, there is no specific statement of that, but it is a legitimate inference which we must draw in plaintiff's favor on a demurrer or peremptory instruction. It was stated that that was the usual way of doing with such class of freight. But, even though the car was not left at Grand avenue, but was taken to West Bottoms the night of arrival and before defendant saw the extraordinary character of the water, yet there was enough evidence in the case to go to the jury on the question of negligence in not getting it out before too late. We cannot say, without an exercise of arbitrary and unwarranted power, that the entire evidence leaves defendant so clearly without fault as to deprive plaintiff of a right to the opinion of the jury.

There was evidence, from which a legitimate inference may be drawn, that, but for many of defendant's experienced employees going on a strike and quitting its service a few days before, it could have taken the car out to a place of safety. But a strike, while possibly a misfortune, is no excuse. [Read v. Railway, 60 Mo. 207; Cleary v. Transit Co., 108 Mo. App. 436.] Besides, on the additional contention of plaintiff which, as we have seen, the evidence tends to support, the strike should have rendered the defendant the more careful as to the situation in which it placed plaintiff's property.

And the same may be said concerning the evidence in defendant's behalf of the crowded condition of its road

and yards, on account of pressure of business at that season of the year. [Faulkner v. Railway, 51 Mo. 311.]

There were other points of objection to the judgment urged by defendant, though not discussed in detail. We have considered them, but think they are not well taken.

The judgment is affirmed. All concur.