THE LAMAR MANUFACTURING COMPANY, Respondents, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals,    March 5, 1906.

1. **COMMON CARRIERS: Liability: Act of God: Negligence.** Where the carrier's negligence mingles as a co-operative cause with the act of God, the carrier is liable, provided the loss is within the probable consequences of the negligent act; but human foresight cannot guard against the sudden and unheralded

outbursts of natural forces, since time, place and the destructive power of such visitations cannot be anticipated, and, therefore, people cannot be expected to act with reference thereto.

2. ———: ———: ———: ———: **Warning.** When an extraordinary disturbance gives warning of its time and path and magnitude, carriers are charged with the duty of exercising care commensurate with the existing exegencies; and a breach of such duty is negligence and becomes the approximate cause of resulting injury.

3. ———: ———: ———: ———: **Order of Proof.** When the consignee shows the delivery to the carrier and the latter's failure to deliver, he makes a prima facie case and the burden shifts to the carrier to show the loss was the direct result of the act of God, and then the burden of proof of the carrier's concurring negligence is upon the shipper to show the carrier's knowledge or want of care to ascertain that the act of God was imminent.

4. ———: ———: ———: ———: **Evidence.** On a review of the evidence it is held that there is a failure to show negligence of the carrier in failing to ascertain the imminence of the flood of 1903 in the west bottoms of Kansas City.

Appeal from Barton Circuit Court.—*Hon. Henry C. Timmonds,* Judge.

REVERSED AND REMANDED.

*L. F. Parker* and *Woodruff & Mann* for appellant.

(1) There was no evidence either on part of plaintiffs or defendants which could, by any hook or crook, be construed that defendant did become aware of the impending and approaching flood in time to have removed the goods to a place of safety. (2) We think not, and that the giving of these instructions was error. The statement that instructions which there is no evidence to support should not be given hardly needs the citation of authorities to support it. Mfg. Co. v. Shreve, 94 Mo. App. 518-525; Marr v. Bunker, 92 Mo. App. 661; Railroad v. Railroad, 118 Mo. 625; Paddock v. Somers, 102 Mo. 239. (3) And the burden of showing this knowledge on defendant's part was upon plaintiffs. Read v. Railroad, 60

Mo. 199. (4) The court should have peremptorily instructed the jury to find for defendant at the close of all the evidence. (5) After defendant had accounted for the loss of the goods by the Act of God, it was not for it to show the possession of said goods at said time and place on a theory consistent with due care, but for plaintiffs to show said possession at said time and place on a theory inconsistent therewith. That such theory must not rest upon bare conjecture, but must rest either upon direct proof or upon proof of facts establishing such theory by logical inference is stated by all the authorities. Breen v. Coop. Co., 50 Mo. App. 214; Epperson v. Tel. & Cable Co., 155 Mo. 382; Fuchs v. St. Louis, 133 Mo. 196; Fuchs v. St. Louis, 167 Mo. 635; Glasscock v. Dry Goods Co., 106 Mo. App. 664; Yarnell v. Railroad, 113 Mo. 570; Hornstein v. United Railways, 97 Mo. App. 277; Norville v. Railroad, 60 Mo. App. 416.

*Cole, Burnett & Moore* for respondents.

(1) Appellant could not convict the trial court of error for overruling demurrers to the evidence, and the same reason effectually answers appellant's complaint that the court erred in giving respondents' instructions numbered 2 and 3 and in submitting to the jury the issue as to appellant's negligence in permitting the goods to be submerged; since appellant submitted the very same issue in its instruction numbered 5, given without objection, and requested it in numbered 6, refused. These instructions clearly recognize that there was some evidence of negligence, in connection with the Act of God, and by the well-established law they silence and estop appellant from asserting the contrary. Merrielees v. Railway, 163 Mo. 486; Phelps v. City, 161 Mo. 1-14; Seiter v. Bischoff, 63 Mo. App. 160; Mercantile Co. v. Burrell, 66 Mo. App. 121-2; Hopkins v. M. W. of A., 94 Mo. App. 409. (2) A party is not "entitled to a reversal on a theory of law in conflict with the instructions which

were given at his instance," and having injected that issue into the case appellant is deprived of the Moffatt doctrine. Horgan v. Brady, 155 Mo. 670. (3) Any and all of the foregoing propositions relieve the court from the necessity of considering the question of negligence; but if the court for any reason should take it up, we insist that there was ample substantial evidence before the jury even to satisfy the latest rulings on the question of negligence concurrent with the Act of God. Bank v. Railway, 69 Mo. App. 253; Bishop v. Ins. Co., 85 Mo. App. 306; Sloop v. Railroad, 84 S. W. 111-113; Davis v. Railway, 89 Mo. 348; Davis v. Railway, 13 Mo. App. 454. (4) Furthermore the presumption of law is that when the goods were delivered at Lamar in a ruined condition by the Frisco, as terminal carrier, that road's negligence caused the loss, for the shipper cannot follow his goods and tell just where and how they were injured. Flynn v. Railway, 43 Mo. App. 438 et seq.; Lin v. Railway, 10 Mo. App. 129-130; Bevis v. Railway, 26 Mo. App. 25; Crouch v. Railway, 42 Mo. App. 252; 6 Cyc. 490; Lawson on Presumptive Evi., p. 166d; Heck v. Railway, 51 Mo. App. 533; Cash v. Railroad, 81 Mo. App. 115; Bevis v. Railway, 30 Mo. App. 566; Hance v. Express Co., 48 Mo. App. 185. (5) Counsel refer to the Moffatt decision in a manner to indicate they think it necessarily disposes of this case adversely to respondents, and that there can be no recovery in a case involving such an Act of God; the case does not so hold, and such is not the law. Moffatt v. Railway, 88 S. W. 117; Davis v. Railway, 89 Mo. 347; Prince v. Compress Co., 86 S. W. 878; Ordelheide v. Railroad, 80 Mo. App. 369; Rutledge v. Railroad, 123 Mo. 140.

JOHNSON, J.—Action against a common carrier brought by the consignees and owners of certain merchandise to recover damages for injury thereto, alleged to have been caused by the negligence of defendant. Plaintiffs had judgment and defendant appealed.

Plaintiffs, retail merchants in Lamar, purchased the goods of a wholesale concern in St. Joseph. The latter made two shipments of them, both over the line of the St. Joseph & Grand Island Railroad Company. The first was delivered to the carrier at St. Joseph in the afternoon of May 26, 1903, and the second two days later. The line of this carrier terminates at Kansas City and from there the goods when shipped were routed over defendant's road to their destination. The petition is in two counts, one for each shipment; and the negligence charged with respect to the first shipment is, "that by the default and miscarriage of the defendant and by reason of its unreasonable delays and its careless and negligent handling of said goods it failed to deliver said goods to plaintiffs in good order, but on or about the 25th day of July, 1903, defendant delivered said goods at Lamar" so damaged and spoiled that their value was less than the freight charges upon them. The allegations relating to the second shipment are the same excepting as to the date of delivery, which was July 5, 1903.

The defense is that the goods were damaged not by any negligence of defendant, but by the Act of God, that is, they were caught in the extraordinary flood of 1903 that wrought such havoc in the bottoms of the Missouri and Kansas rivers at Kansas City. At the conclusion of the evidence, defendant requested the giving of a peremptory instruction in its favor, which the court refused and the issues of fact submitted to the jury very clearly appear in this extract from the instruction given. ¡

"And, if you shall further believe from the evidence that said goods were destroyed or damaged while in the possession of defendant and that they were so destroyed or damaged by reason of negligence on the part of defendant, then your verdict should be in favor of the plaintiffs. But, if you shall believe from the evidence that said goods were so destroyed or damaged by reason of a sudden and extraordinary flood after coming into the possession of the defendant at Kansas City (if

they did so come into its possession), your verdict should be in favor of the defendant unless you shall further believe from the evidence that defendant became aware of the impending and approaching flood in time to have removed the goods to a place of safety by the exercise of ordinary care and diligence. If you shall believe from the evidence that the defendant did become aware of the impending and approaching flood, if there was one, in time to remove them to a place of safety by the exercise of ordinary care and diligence, then the flood does not excuse it, and your verdict should be for the plaintiffs."

Defendant's contention is that there is no evidence in the record accusing it of negligence; that all of the evidence points to the Act of God as the proximate cause of the injury and therfore the case should not have gone to the jury.

We think it is fairly inferable from the facts appearing in the evidence introduced by plaintiffs that both shipments of goods were in the possession of defendant for carriage to their destination during Saturday, May 30th, and thereafter; that defendant had negligently delayed forwarding them and that, had the usual and reasonable diligence been employed, the goods would have escaped the flood; but all this may be true and still the facts in proof fall short of showing that the injury was the direct and not a remote result of defendant's negligence. As was well stated by ELLISON, J., in the case of Moffatt v. Railroad Co., 113 Mo. App. 544, 88 S. W. 117. "Whenever the negligence of the carrier mingles with the Act of God as a co-operative cause, the carrier is liable provided the resulting loss is within the probable consequences of the negligent act; otherwise it will be too remote and disconnected to be considered the probable cause." In the exercise of reasonable care, of which negligence is the antonym, human foresight and prudence cannot foresee and guard against the sudden, unheralded and overwhelmingly powerful outbursts of natural forces and, because neither time, place, nor de-

structive power of such visitations may be anticipated, people cannot be expected to act with reference to them and therefore negligence which, by chance, places persons or property within their destructive reach, should not be deemed a co-operative cause of injury. This subject was thoroughly considered in the Moffatt case and needs no further discussion on this occassion.

But, when an extraordinary natural disturbance gives warning of the time and path of its approach and of its general magnitude and power, they (such as common carriers), whose business places them in charge of the safety of persons and of the property of others, are charged with the duty of exercising care, commensurate with the exigencies of the situation, to protect those, whom they serve, against injury from the approaching danger. A breach of such duty is negligence and, if injury results, must be regarded as a proximate and not a remote cause of the injury. We so held in the recent case of Pinkerton v. Railway, 117 Mo. App. 288.

In the application of these principles to the facts of the case in hand, it is important to consider upon whom devolves the burden of proof with respect to the issue of concurring negligence. In showing the delivery in good order of the goods to defendant for transportation and the failure of defendant to deliver them in like order at their destination in a reasonable time, plaintiffs presented a prima facie right to a recovery for the damages sustained. It then devolved upon defendant to excuse itself from liability by showing, as it did, that the injury was the direct result of the Act of God under consideration, but the defendant was not required to go further and show affirmatively that it was guilty of no negligence. The burden of proving the concurring negligence of defendant was upon the plaintiffs. That is, it was incumbent upon them to show that defendant knew, or by the exercise of due care might have known, of the coming of a flood of sufficient volume to submerge their freight house and yards in time to have removed the

property of plaintiffs and others out of danger. [Read v. Railroad, 60 Mo. 199; Davis v. Railway, 89 Mo. 340.]

Turning to the evidence before us, plaintiffs introduced proof of facts sufficient to sustain their initial burden without referring to the cause of the injury to their property and then rested; defendant thereupon showed that the goods were injured by a sudden and extraordinary flood, the like to which had not occurred within the memory of living witnesses; plaintiffs, in rebuttal, in effect conceded the damage was inflicted by the flood and introduced testimony showing its magnitude and the general destruction wrought by it to all kinds of property situated in the river bottoms; so that from the uncontradicted testimony of both parties, the fact stands admitted that the direct cause of the injury was a flood of such unprecedented dimensions and destructiveness as to fall within the class designed as Acts of God and defendant's demurrer to the evidence should have been sustained, unless it further appears from the evidence that defendant knew or by the exercise of reasonable care might have known of the approach of a flood of such proportions in time to have removed freight in its freight house and in cars on track to a place of safety.

The only fact in proof, pointed to by plaintiffs, as even tending to show that defendant had any such warning of the approach of danger to its property is found in the testimony of the local freight agent of the Grand Island Company, who stated that at about three o'clock in the afternoon of Saturday, May 30th, he observed that the water was "lapping the rails" in the Grand Island yards and spoke to the yardmaster "about pulling some cars out of the yard and he said he would as soon as the train got in that evening, and it was about ten o'clock when the train got in, and it was so high they could not touch them. It was about six o'clock in the evening when the flood struck us." It appears that the freight house and yards of defendant were close to the bluffs and on

higher ground than those of the Grand Island Company.
Defendant's witnesses say they first became apprehen-
sive of an invasion of water upon defendant's property
at about 8:30 o'clock Sunday morning.  They then no-
ticed "the flood coming from the direction of the river
to within about two-hundred feet of the freight house;
then, in order to save the property of the company and
our customers, we discontinued unloading the freight
into the freight house and went to work with the force
of men to placing all freight in the freight house as high
as possible by putting it upon empty boxes and boards."
This work was continued until about eleven o'clock that
morning when the rising water compelled its abandon-
ment.  There is nothing in the bare fact that the water
had reached land nearer the rivers and on a lower level
to justify the inference that defendant should have an-
ticipated the flood would continue to increase in volume
to the extent of submerging the floor of its freight house.
In the Pinkerton case, facts were adduced that strongly
tended to show that the defendant there in the forenoon
of Saturday had warning of what was coming and set
all its switch engines to work pulling cars from low to
higher ground, and we there held it was proper to sub-
mit the issue of defendant's negligence to the jury, but,
in the record before us, there are no facts, unless we
should build presumption upon presumption, that even
tend to accuse defendant of exhibiting a lack of ordinary
foresight and prudence.

The one fact that the water at a given time had
reached a certain abnormal stage was of itself no indica-
tion that it would continue to rise or, if it did, that it
would increase to any certain volume.  To hold defend-
ant guilty of negligence, the presumption must be in-
dulged, without any fact in proof to sustain it, that the
height of the water in the afternoon of Saturday alone
indicated that it might continue to rise until it became
so high that it would reach freight in defendant's house
and cars.  It must be apparent that in the absence of any

proof showing either the origin and nature of the flood and the conditions prevailing in the areas from whence it came, or of the existence of knowledge in defendant of its real character, or of information relative thereto available to defendant, the conclusion that defendant failed to exercise reasonable care necessarily must rest upon conjecture and not upon facts in evidence.

In this state of proof, the demurrer to the evidence should have been given and it follows that the judgment must be reversed and the cause remanded. All concur.