ITHACA ROLLER MILLS *v.* ANN ARBOR RAILROAD CO.

1. APPEAL AND ERROR—LAW CASES NOT HEARD DE NOVO IN SUPREME COURT.

The Supreme Court does not hear law cases *de novo*, but exercises appellate jurisdiction under well-established rules.

On duty of carrier where act of God has occurred or is threatened, see notes in 29 L. R. A. (N. S.) 671; L. R. A. 1916D, 981.

2. SAME—WEIGHT OF EVIDENCE—QUESTIONS FOR REVIEW.

Where the question as to whether the findings of the trial judge are against the weight of the evidence is properly raised, the Supreme Court, on error, is bound to examine the record and determine said question, but it may not substitute its conclusions on the facts for those of the trial judge, or disregard his findings, unless they are clearly against the weight of the evidence.

3. CARRIERS — CONNECTING CARRIER — WAREHOUSEMAN—NOTICE TO CONSIGNEE.

A connecting carrier was not holding a shipment of beans at destination as a warehouseman when they were damaged by a flood, so as to prevent an action against the initial carrier under the Carmack Amendment (U. S. Comp. Stat. §§ 8604a, 8604aa) where notice of their arrival had not been given the "notify consignee."

4. SAME—NEGLIGENCE—ACT OF GOD—LIABILITY OF CARRIER WITH NOTICE.

Where a carrier failed to take reasonable precautions to protect a shipment of beans in its freight house at destination after receiving notice that a flood was imminent, it was liable for the loss caused thereby, since its own negligence, and not the act of God, was the proximate cause of the loss.

Error to Gratiot; Moinet (Edward J.), J. Submitted October 12, 1921. (Docket No. 92.) Decided February 8, 1922.

Case by the Ithaca Roller Mills against the Ann Arbor Railroad Company for damage to goods in transit. Judgment for plaintiff. Defendant brings error. Affirmed.

*Morison R. Waite, O. G. Tuttle,* and *Herbert S. Harr,* for appellant.

*George P. Stone,* for appellee.

FELLOWS, C. J. This case originated in justice's court in 1913. In the circuit it was tried before the judge

without a jury and findings of fact and conclusions of law were duly filed. By appropriate proceedings defendant preserved all questions for review, including the question of whether the findings are against the weight of the evidence. This question we will first consider. Much space is taken in both briefs with a discussion of the facts. We do not hear law cases *de novo* as we do equity cases; our consideration of the facts in law cases where this question is properly raised, as it here is, being limited by the fact that we are exercising appellate jurisdiction under well-established rules. We are bound to examine the facts disclosed by the record to determine whether the findings are manifestly against the clear weight of the evidence or, as it is sometimes expressed, against the overwhelming weight of the evidence. But we cannot substitute our own conclusions on the facts for those of the trial judge or disregard his findings unless this condition is met. A careful reading of this record is convincing that we should accept the conclusions of the trial judge on the facts and that the findings are not clearly against the weight of the evidence.

We shall not detail the testimony or findings of fact further than may be necessary to an understanding of the case. In substance the trial judge found: In March, 1913, plaintiff shipped over defendant's road 50 bags of beans of the value of $264.56 to Ironton, Ohio; W. A. Murdock was the notify consignee. The Cincinnati, Hamilton & Dayton Railroad was the connecting carrier from Toledo to Ironton. The beans reached Ironton on March 24th, in reasonable season, and were unloaded into the freight house of the connecting carrier on the 25th. Mr. Murdock was not notified of their arrival. Ironton is located on the Ohio river. It was visited by destructive floods in 1883, 1884 and 1907. On the 24th of March, the day the shipment arrived, the river was running full. It

commenced to rise the 25th and the rise continued during the succeeding days, culminating on Sunday, the 30th. The flood did much damage to the city. The shipment of beans was soaked with water; some of the beans were turned over to the relief committee, but were not usable and the balance were thrown away. On Saturday, the 29th, Mr. Murdock, the notify consignee, went to the freight house of the Detroit, Toledo & Ironton in the same building as the freight house of the Cincinnati, Hamilton & Dayton and removed to a boat he had procured about a hundred tons of freight. He was unable to get into the Cincinnati, Hamilton & Dayton freight house because it was locked. It appears from the testimony of the freight agent of the connecting carrier that he left the freight house on Friday and did not return until Sunday. The water was not up to the freight house floor on Saturday. The following day, however, it was from 24 to 30 inches deep.

The court further found that as early as Wednesday telegrams and telephones were received from localities up stream telling of the flood and that the mayor of Ironton issued repeated warnings that a destructive flood was approaching, and advising diligence for the safety of the people and their property, and that such warnings were given publicity through the press, and that the agents of the carrier had knowledge of the imminent danger but took no steps to protect the property in its freight house, but left the freight house locked up from Friday until Sunday. He concluded as matter of law that although the flood was an act of God, it was not a defense where the carrier had notice of the impending flood and did not use reasonable means to protect the shipment from destruction although it had ample time so to do.

There are numerous assignments of error on the admission of testimony. They have all been ex-

amined and may be disposed of by the statement that we have discovered no testimony which was considered by the court and which entered into his findings which was improperly received. Nor will we devote any considerable space to the consideration of the legal contention of defendant's counsel (based on its claim that notice of the arrival of the shipment was given to the notify consignee) that the Cincinnati, Hamilton & Dayton, the connecting carrier, was holding the goods as warehouseman, and that liability could not be predicated against the initial carrier under the Carmack amendment (U. S. Comp. Stat. §§ 8604*a*, 8604*aa*). The trial judge having found that the notify consignee was not given notice of the arrival of the shipment, it is manifest that the Cincinnati, Hamilton & Dayton was not holding the beans as warehouseman. *Wallace* v. *Railway Co.,* 176 Mich. 128 (Ann. Cas. 1915B, 631).

We find no difficulty in agreeing that this disastrous flood was an act of God; nor do we find any difficulty in agreeing that the carrier is not liable when the loss is occasioned by the act of God or the public enemy. Our difficulty is reached when we come to the task of applying the law to the found facts. Was the loss occasioned by the act of God, or by the negligence of the defendant in failing to take reasonable precautions to protect the shipment from the flood after it had notice that it was imminent? The trial judge reached the conclusion that the latter was the cause of the loss, not the former, and concluded that the carrier was liable. Defendant's counsel cite on this branch of the case the following authorities: 1 Michie on Carriers, § 991; 10 C. J. p. 112; *Fentiman* v. *Railway Co.,* 44 Tex. Civ. App. 455 (98 S. W. 939); *Pearce* v. *The Thomas Newton Co.,* 41 Fed. 106; *People* v. *Utica Cement Co.,* 22 Ill. App. 159; *Wertheimer, Swartz Shoe Co.* v. *Railway Co.,* 147 Mo. App.

489 (126 S. W. 793) ; *Norris* v. *Railway Co.*, 23 Fla. 182 (1 South. 475) ; *Insurance Co.* v. *Tweed,* 7 Wall. (U. S.) 44; *Scheffer* v. *Railway Co.*, 105 U. S. 249; *Empire State Cattle Co.* v. *Railway Co.*, 210 U. S. 1 (28 Sup. Ct. 607, 15 Ann. Cas. 70) ; *Michigan Cent. R. Co.* v. *Burrows,* 33 Mich. 6; *Rodgers* v. *Railway Co.*, 75 Kan. 222 (88 Pac. 885, 10 L. R. A. [N. S.] 658, 121 Am. St. Rep. 416, 12 Ann. Cas. 441) ; *Lamar Manfg. Co.* v. *Railroad Co.*, 117 Mo. App. 453 (93 S. W. 851). These authorities have all been examined together with numerous others including our own cases of *Lardie* v. *Railroad Co.*, 192 Mich. 77; *McLane, Swift & Co.* v. *Elevator Co.*, 136 Mich. 664 (112 Am. St. Rep. 384), and others. These authorities in the main deal with delays in shipment; the cases may be denominated "delay cases." They are cases where it has been sought to meet the defense of the act of God by showing that the shipments have been delayed. The theory underlying the decisions is that the carrier could not reasonably have foreseen or anticipated that the goods would be overtaken by such a casualty as a natural and probable result of the delay, and that the delay was not the proximate cause. It may be said in passing that the courts are not all in accord with the holdings above cited. *Rodgers* v. *Railway Co.*, *supra,* and *Green-Wheeler Shoe Co.* v. *Railway Co.*, 130 Iowa, 123 (106 N. W. 498, 5 L. R. A. [N. S.] 882, 8 Ann. Cas. 45), ably present the conflicting views. We need not pursue the co-called delay cases further nor need we question their soundness in any degree as we are satisfied that upon principle they are not applicable and that the question here presented is not controlled by them.

The author of the article on "Carriers" in Ruling Case Law recognized the doctrine of the delay cases and that a majority of the courts of last resort have

followed it (4 R. C. L. p. 721) but unequivocally states
(4 R. C., L. p. 710) :

"Also, while it is true that no human agency can
prevent or stay an act of God, the act itself being that
of omnipotence, and irresistible, it is frequently the
case that the results or natural consequences of an act
of God, by the exercise of reasonable foresight and pru-
dence, may be foreseen and guarded against.   Where
this can be done by the exercise of reasonable diligence
and prudence, a failure to do so would be negligence
and subject the party upon whom this duty devolved
to damages, although the original cause was an act
of God.   For instance, notice of an extraordinary rise
at the head of a river might be sufficient to cause per-
sons engaged in business lower down to expect a pro-
portionate rise, and to prepare for it, this being de-
pendent more or less on the suddenness of the rise,
and the time remaining after notice, and before the
rising water reached the place where the injury oc-
curred.   Accordingly, if a loss is caused by that kind
of force of the elements which could have been foreseen
or prevented, or by the force of the elements combined
with such act of man as could have been avoided, the
carrier is liable."

1 Hutchinson on Carriers (3d Ed.), § 292, reads as
follows:

"But although the carrier will be excused if an act
of God occasioned the loss, if it appear that his own
misconduct concurred with the act of God in bringing
the loss about, he cannot escape liability.   He is bound
to exercise due care and diligence in view of the at-
tending circumstances to protect the goods intrusted to
him for carriage.   And this obligation will require
that he take such precautions, when the means of do-
ing so are at hand, as are reasonably necessary to
avert a threatened danger; and if a loss ensue through
his failure to take such precautions, he will not be
permitted to shield himself from liability on the
ground that the loss was occasioned by an act of
God.   He must also take notice of any signs of ap-
proaching danger, and, if they are such as reasonably
to awaken apprehension, and he has the facilities for

escape under his control, he must employ such facilities in removing the goods to a place of safety. And in general it may be stated that where the carrier by the exercise of reasonable diligence could have foreseen the happening of an event such as might reasonably be presumed would cause injury to the goods, and he fails to make use of the means at his command to guard against it, and the goods are thereby lost or injured, he will be liable although such loss or injury would not have happened but for an act of God. Thus where cars loaded with goods were permitted to remain standing at a place where they were likely to be submerged by a flood, and the cars were later submerged and the goods injured, it was held that the carrier was liable for his failure to remove the cars to a place of safety. So where a carload of wheat was allowed to remain on a side track at a time when the water in a nearby river was steadily rising, which fact was known to the carrier's servants, and the car was later partially submerged and the wheat damaged, it was held that the question whether the carrier had exercised ordinary care in preventing the loss by removing the car to a place of safety was properly one for the jury."

Mr. Michie thus tersely states the rule (1 Michie on Carriers, § 993) :

"An act of God is no excuse where the carrier could have anticipated the danger and provided against it or avoided it by the exercise of proper care."

In 13 Am. & Eng. Enc. Law (2d Ed.), p. 721, the rule is thus stated:

"An extraordinary flood is to be classed among the acts of God which no human power can prevent or avert. Whether it will relieve the carrier from liability, depends upon whether its results or natural consequences could by the exercise of reasonable foresight and prudence have been foreseen and guarded against. If the emergency was one that no human sagacity, guided by any of the known principles of human reasoning, could have anticipated, the carrier will be relieved. If, on the other hand, its effects

might have been foreseen by the exercise of reasonable diligence and prudence, a failure to do so would be negligence and subject the carrier to damages, although the original cause was the act of God."

In *Savannah, etc., R. Co.* v. *Guano Co.*, 103 Ga. 590 (30 S. E. 555), it was said by Mr. Justice Lewis, speaking for the court:

"The casualty which caused the injury to the goods may be regarded as an act of God, but the carrier is not protected on this account where he could have foreseen the happening of the event, or by the exercise of due diligence could have provided against such an occurrence."

In *Smith & Co.* v. *Railway*, 91 Ala. 455 (8 South. 754, 11 L. R. A. 619), the court held that the facts did not justify recovery, but recognized the rule that:

"Notice of an extraordinary rise at the head of a river might be sufficient to parties engaged in business lower down to expect a proportionate rise, and to prepare for it, dependent more or less upon the suddenness of the rise, and the time after notice, and before the rising water reached the place where the injury occurred."

Taking up now the decisions of the courts of Kansas and Missouri, because these states are most strongly relied upon by defendant's counsel, we find that the delay cases have been held not to be controlling where the carrier has reasonable notice and opportunity to safeguard the shipment against the act of God and fails to take reasonable precautionary measures. We have already noted that *Rodgers* v. *Railway Co.*, *supra*, is a leading case. In an exhaustive opinion Mr. Justice Burch fully reviews the authorities and concludes that liability of the carrier does not exist in the delay cases. This case grew out of the flood at Kansas City in 1903, which was the cause of much litigation and some divergent judicial opinions dependent in some

degree on different records.    Another case reaching the supreme court of Kansas growing out of this flood was *Atchison, etc., R. Co.* v. *Henry,* 78 Kan. 490 (97 Pac. 465, 18 L. R. A. [N. S.] 177).    The court followed the *Rodgers Case* and reversed a judgment for plaintiff rendered by the trial court.    The case went back for a new trial and again appeared in the supreme court in *Henry* v. *Railway Co.,* 83 Kan. 104 (109 Pac. 1005, 28 L. R. A. [N. S.] 1088), upon review of a judgment for defendant.    The court again recognized the correctness of the doctrine of the *Rodgers Case,* but taking a different view than when the case was first before it, sustained liability where the carrier had not before the flood delivered the goods to the consignee upon his reasonable demand, the court saying:

"There was no excuse or justification for withholding them from him, and the refusal of the railway company to deliver them made it guilty of a wilful wrong, but for which there would have been no loss."

Turning now to the decisions of the Missouri courts and first taking up cases in the court of appeals.    The case of *Moffatt Commission Co.* v. *Railway Co.,* 113 Mo. App. 544 (88 S. W. 117), also grew out of the Kansas City flood.    It was a delay case and liability was denied.    But in the case of *Pinkerton* v. *Railway Co.,* 117 Mo. App. 288 (93 S. W. 849), the court had before it another Kansas City flood case and in sustaining liability of the carrier, and referring to the earlier case, it was said:

"But in the *Moffatt Case,* we recognized that, if injury from the act of God might have been avoided by reasonable foresight and care, liability would follow.    And so the learned trial judge instructed the jury in this case, that if 'the defendant became aware of the impending and approaching flood in time to have removed the goods to a place of safety by the

exercise of ordinary care and diligence,' it was liable
for the loss. *Davis* v. *Railway*, 89 Mo. 340, 347 (1
S. W. 327). So, therefore, the question is: Was there
evidence adduced which had a tendency to support the
hypothesis thus submitted to the jury? An examina-
tion of the record satisfies us that, there was."

In *Clark* v. *Railroad*, 39 Mo. 184, the supreme court
of Missouri had before.it a delay case. The property
had been destroyed by the public enemy; there had
been a delay in shipment. The court denied liability
but said:

"Though the act of God or of the public enemies be
in itself alone a good defense, yet if the loss be di-
rectly brought about by reason of the negligence or
want of proper care and foresight of the party him-
self, it would not excuse him."

In the later case of *Davis* v. *Railway Co.*, 89 Mo.
340 (1 S. W. 327), that court had before it a case of the
loss of goods in a flood at Toledo, Ohio, where there
was some evidence that proper steps had not been
taken by the carrier to protect the shipment after the
flood became imminent. The court held that the evi-
dence made a case of negligence for the jury and said:

"If the preponderance of all the evidence does not
establish that the direct, immediate and efficient cause
of the injury was an inevitable flood or inundation,
the defendant is liable, and although the cause of the
loss may have been an act of God, such as a great
flood in the Maumee river, yet, if the defendant neces-
sarily exposed the goods of plaintiff to such peril by
any culpable or negligent act or omission of its own,
it is not excused."

We shall not pursue the authorities further. Where
the, carrier, as in the instant case, had warning of
the oncoming flood, ample time after such warning to
protect the shipment, and did not take reasonable pre-
cautions to protect the same after such notice, he is not
exonerated from liability upon the principles laid down

in the delay cases.    The case was disposed of by the trial judge under the rule above quoted from the text-writers and courts.    We have no disposition to alter or change this rule.

The judgment will be affirmed.

WIEST, STONE, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.