WERTHEIMER, SWARTZ SHOE COMPANY, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 22, 1910.

COMMON CARRIERS: Negligence: Destruction of Goods: Flood: Act of God: Proximate Cause: Facts Stated. The waters of rivers had been gradually rising for several days until the night of May 30th, threatening to inundate railroad tracks on which goods were standing, and the weather office and newspapers had sent out warnings of danger. Similar overflows had occurred before without damaging property, and similar warnings had been given by the weather office. On May 31st, an unforeseen,

unprecedented and overwhelming flood occurred. The flood was unexpected even by the government weather officials, and the goods which had not been removed from the yards were destroyed. *Held*, that the loss was due to the flood, and not to the railroad's failure to remove the goods to a place of safety.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED AND REMANDED (*with directions*).

*Robert T. Railey* and *James F. Green* for appellant.

(1) The action of the court in sustaining a motion for a new trial is subject to review on appeal. Millar v. Car Co., 130 Mo. 517; Candee v. Railroad Co., 130 Mo. 154; Taylor v. Architectural Co., 47 Mo. App. 257; Kuenzel v. Nicholson, 73 Mo. App. 14; Valois v. Warner, 1 Mo. 730. (2) Upon the uncontradicted testimony, the judgment should have been for the defendant, and the court therefore erred in setting aside the verdict in favor of defendant. Merritt v. Railroad, 122 S. W. Rep. 322; Moffatt v. Railroad, 113 Mo. App. 544; Mfg. Co. v. Railroad, 117 Mo. App. 453; Lightfoot v. Railroad, 126 Mo. App. 532; Cattle Co. v. Railroad, 135 Fed. Rep. 135; Rogers v. Railroad, 75 Kansas 222; Grier v. Railroad, 108 Mo. App. 565; Elam v. Railroad, 110 S. W. 602; Hay Co. v. Railroad, 113 Mo. App. 651; Brewing Assn. v. Talbot, 141 Mo. 686.

*David Goldsmith* and *Karl M. Vetsburg* for respondent.

(1) The plaintiff's motion for a new trial should be sustained because the verdict of the jury on the third count is inconsistent with that under the first count. Chicago Co. v. Stepp, 88 N. E. 343; Phillips v. McDonald, 2 Mill Const. 269; Raymond v. Kiseberg, 84 Wis. 302, 19 L. R. A. 643; Everroad v. Gabbert, 83

Ind. 489; Crawford v. Stock Yards, 215 Mo. 394; Chlanda v. Transit Co., 213 Mo. 262. (2) The court erred in its rulings on the instructions offered by the plaintiff with respect to the third count and in the instructions given by it of its own motion under that count. Plaintiff's motion for a new trial should therefore be sustained. Warehouse Co. v. Railroad, 124 Mo. App. 545; Merrett v. Farle, 29 N. Y. 115; Steamboat Co. v. Tierrs, 24 N. J. L. 697. (3) Plaintiff's motion for a new trial should be sustained because the court erred in admitting evidence as to the conduct of other persons having places of business in the west bottoms. Grier v. Railroad, 108 Mo. App. 574; Koons v. Railroad, 65 Mo. 597; Kelley v. Parker-Washington Co., 107 Mo. App. 495; Jenkins v. Hooper, 13 Utah 103; Hill v. Prov. S. Co., 125 Mass. 292; East Tenn. v. Kane, 92 Ga. 187; Railroad v. Clark, 108 Ill. 113; Calf v. Railroad, 87 Wis. 276; Gardner v. Friederich, 25 N. Y. App. Div. 528, affirmed 163 N. Y. 568; Calamet v. Crentz, 80 Ill. App. 96; Hill v. Windsor, 118 Mass. 259; Grand T. v. Richardson, 91 U. S. 469. (4) Plaintiff's motion for a new trial should be sustained because the verdict is against the weight of the evidence. Under the testimony, the verdict on both counts should have been for plaintiff. Memorandum of Trial Judge, rec. p. 220; Railroad v. Madden, 103 S. W. 1193; Fentiman v. Railroad, 44 Tex. Cir. Rep. 462; Pinkerton v. Railway, 117 Mo. App. 293.

GOODE, J.—Plaintiff filed this action to recover for the loss of two shipments of boots and shoes, the first consisting of five cases delivered on May 25, 1903, to defendant for carriage from St. Louis to Chapman, Kansas, there to be turned over to Carroll Brothers, and alleging the total loss of said goods. There is a second count with which we are not concerned, as the cause of action was dismissed. A third count alleged delivery to defendant on May 26, 1903, of four cases of

boots and shoes, to be carried from St. Louis to Kansas City and delivered to John Carroll. It was averred defendant failed to deliver these goods, to plaintiff's damage in the sum of $707.43. To both the first and third causes of action defendant pleaded the goods were destroyed by a sudden and unprecedented flood of water from the Kaw and Missouri rivers, the first shipment having been turned over to the Union Pacific Railroad by defendant before its destruction and the second shipment being still in defendant's hands, because the flood occurred before defendant had an opportunity to deliver them to the consignee. Both consignments of goods were in the railroad yards at the Union Station in Kansas City, Missouri, when they were suddenly submerged by a flood of such unprecedented magnitude, that plaintiff concedes it was an act of God for the consequence of which defendant is not liable. But plaintiff contends the destruction of the property was not due entirely to the flood but is partially to be attributed to the negligence of defendant in omitting to put the property in a place of safety, though it is said there was ample time to do this while the flood was swelling and before it reached the property. The court below left it to the jury to say whether the loss was due exclusively to the sudden rise of the waters, or defendant had notice of their rising and the attendant danger in time to have removed the property to where it would be safe. The jury returned a verdict for plaintiff on the first count of the petition, assessing his damages at $90.60, and a verdict for defendant on the third count. The court set this verdict aside on plaintiff's motion and granted a new trial on the ground the finding on the third count was inconsistent with the finding on the first count. In connection with its order sustaining the motion for new trial, the court filed a memorandum saying proper rulings had been made on the requests for instructions and no substantial error to the prejudice of plaintiff had been com-

mitted in admitting evidence; that substantial justice had not been done, the verdict on the two counts being inconsistent and the diverse results reached by the jury having no warrant in the slight difference in the evidence bearing on the respective counts; saying further, that while the court was not bound to be satisfied with the verdict of the jury, in order to sustain it, the due administration of justice would best be advanced in the present case by the exercise of reasonable discretion to grant a new trial. This appeal is from the order setting aside the verdict and allowing a new trial; and defendant contends against the adequacy of the reason assigned by the court for its ruling and in favor of the proposition that the evidence showed no cause for a verdict against the defendant on either count of the petition.

Back of the inquiry regarding the sufficiency of the reason for which the verdict was set aside, lies the question of whether a verdict should have been ordered for defendant on both counts, as it contends; and after an attentive study of the record we are convinced this contention is just. It would seem to be superfluous to rehearse the facts of the flood which caused the loss, for they have been set forth in several opinions upon cases the circumstances of which did not differ from those before us. In the following actions instituted by the owners of property destroyed in the flood to recover damages from railroad carriers, the fact supposed to show negligence was failure to remove the property beyond the reach of the waters after warnings from the Weather Office in Kansas City and newspaper reports that danger was to be apprehended by the overflow of the Missouri River bottom where the railroad yards were; the very omission of duty supposed to lay defendant liable in the present case: Lamar Mfg. Co. v. Railroad, 131 Mo. App. 115, 110 S. W. 601; Id., 117 Mo. App. 453, 93 S. W. 851; Lightfoot v. Railroad, 126 Mo. App. 532, 105 S. W. 483; Moffitt Com. Co. v.

Railroad, 113 Mo. App. 544, 88 S. W. 117; Merritt Creamery Co. v. Railroad, 122 S. W. 322; Empire State Cattle Co. v. Railroad, 135 Fed. 135, 210 U. S. 1. In those cases the respective defendants had read bulletins of the Weather Office and newspaper reports of rising waters which threatened to inundate the bottom and the railroad tracks. This rise had been gradual for several days and was due to heavy rains over the States of Missouri and Kansas having swollen the Missouri and Kansas rivers. But similar overflows had occurred before in the river bottom at Kansas City without damaging property, and similar warnings had been given by the weather office. On May 31st an overwhelming flood occurred there in consequence of a vast volume of water pouring from the Kaw river in a torrent strong enough to turn back the current of the Missouri river and cause that stream to flow for a few miles towards its source. This flood was unexpected even by the official in charge of the government weather office in Kansas City, as he testified. The witness said he had sent out bulletins and warnings to railroad companies and others from day to day as the waters rose, giving notice of danger, but the flood stage of thirty-five feet was unexpected. We quote:

"It was extraordinary and unusual and unprecedented, excepting so far as the record of 1844 was in evidence. Does that cover it?

"Q. Well, was the height which the river attained at that time unexpected? A. Yes, sir; I said that thirty-five foot stage was unexpected.

"Q. So, then, that was an unexpected, sudden, unusual and unprecedented flood, wasn't it? A. It was. . . . When I say that was an unexpected flood —it was not an unexpected flood, because I would not have sent out the warnings if it was an unexpected flood; but the thirty-five foot stage was an unexpected stage.

"Q. Here is what I mean, Mr. Connor; the flood, as it existed when it was at its height, was that an unexpected, unusual and unprecedented flood? A. The flood at its highest? . . . Yes, sir."

He said further no one was notified by telephone of the approach of the flood down the Kaw because the weather office was handicapped by not having reports from along that river. The magnitude and suddenness of the inundation is shown by the testimony of all the witnesses and we will copy an excerpt from what one said to enable the reader to realize the nature of the catastrophe:

"The Rock Island and Union Pacific yards had been wholly or partially under water for some days— that is, many of their tracks. That is a condition that had been there a great many times; and no particular alarm was felt about that. But on the 30th the water backed into our cypress yard, and it then got into the lower parts of our State-Line yards through the stock yards, just sufficient to cover the rails in places, and it had worked up the street in front of our warehouse. The rise was very gradual and almost imperceptible. It took a great many hours for it to advance a half a block in the street. And that was the condition when I left my office at about seven o'clock on the night of May 30th; but during that night some heavy flood up in the Kaw valley, on the tributaries of the Kaw, caused the water to come down in such volume as to wash everything before it; just practically like a dam had burst and brought down a great amount of rubbish, houses, boxes, animals, and everything you can conceive, and it came along so swiftly that our engines moving the cars were just 'killed' wherever they were and the fires put out. The engine fires were put out by the water and the engine crews had to jump off and run to places of safety and get out of the bottoms or climb upon something. The street railway company ran their cable trains through the bottoms so everybody could grab the

cable and get out as it went by. Many did not get out and were drowned. Many animals were drowned. The water continued to rise very rapidly from that time until Monday noon, June 1st, I think, was the highest it got, and it slowly receded, but it was many days before it went down so we could get into the bottoms again.''

All the business houses in the bottom were overflowed and thousands of dollars of property, including machinery, merchandise, farming implements and cattle destroyed. People had not thought of removing their property, as it did not occur to them the flood would reach the height it was carried to by the rush of waters from the Kaw. We could not hold a case was made against defendant without disregarding the decisions of the courts cited, supra, and the justice of the controversy. We do not deem it necessary to treat the law of the subject, for that is done thoroughly in said cases and our views were expressed in Grier v. Terminal Assn., 108 Mo. App. 548, 84 S. W. 170. See, too, Am. Brew. Assn. v. Talbot, 141 Mo. 674, 42 S. W. 679.

The judgment is reversed and the cause remanded with a direction to set aside the order sustaining the motion for new trial, reinstate the verdict for defendant on the third count of the petition and enter judgment in accordance with the verdict returned by the jury. All concur.