Jones, E. H., J.
This action was brought in the superior court of Cincinnati by the defendants in error, Mary and Adam'Wuest, doing business as Adam Wuest, against. The Baltimore & Ohio Southwestern Railroad Company, to recover damages sustained during the flood of March, 1913, by plaintiffs below on bales of cotton and linters stored at the storage warehouse of the railroad company at the southwest corner of Front and Mill streets in the city of Cincinnati.
The railroad company, as a part of its business, had three different warehouses in Cincinnati, where it did a storage business for the benefit of the public desiring such accommodations. One was a large, five-story, brick warehouse, extending from the west side of Smith street westwardly to Mill street. In addition to this large warehouse for the storage of general merchandise, the railroad company had a one-story frame building on the southwest corner of Second and Mill streets, and one on the east.side of Mill street. The plaintiffs had stored, at the time of the flood, 324 bales of cotton and linters, all but a small portion of which were stored in what was known as the old Southern Railway building on the southwest corner of Mill and Second streets. A few of the bales were stored in what was called the Fruit House, on the opposite corner. The plaintiffs had been *129 storing cotton in those warehouses for seven or eight years prior to the flood of March, 1913.
Defendant claimed that the damage to plaintiffs’ cotton was due to the flood of March, 1913, and was the result of an act of God. The defendant further claimed that in the exercise of ordinary care, in view of all the circumstances and conditions, it did all that could be reasonably expected of it for the protection of the cotton, and that it is therefore not responsible for the damage sustained by plaintiffs on account of said flood.
The trial resulted in a verdict in favor of the plaintiffs below for $3,631.50, and to reverse the judgment upon this verdict this proceeding in error is prosecuted. The last paragraph of the statement above made accurately states the respective claims of the parties in this case, and tersely states the issue which the jury was called upon to decide, which issue is exclusively one of fact for the jury.
The judgment of the court below, based as it is upon the verdict of the jury, cannot be disturbed by this reviewing court unless it is found that there was some prejudicial error either in the admission or rejection of evidence or in the charge of the court. Recognizing this situation, counsel for plaintiff in error rely for a reversal of this judgment upon alleged errors of the trial judge in the general charge and in the refusal to give certain special charges requested by them, together with the giving of certain special charges requested by plaintiffs below.
The examination of the bill of exceptions, with a view to ascertaining the action of the court in giving the law of the case to the jury, shows that *130 counsel for plaintiff in error in their carefully-prepared brief have made complaints of error which are not borne out by the bill of exceptions. For example, we quote from page 36 of said brief as follows:
“The essential and important fact in this case was that the damage to plaintiffs’ property was caused by 'an act of God’, to-wit, the flood in the Ohio River, and that being the case the defendant’s negligence, if there were any, which we deny and will discuss at a later stage of this brief, did not make the defendant liable for the damage to plaintiffs’ property.”
Continuing, on page 37, counsel quote from the opinion of our supreme court, in Assur v. The City of Cincinnati et al., 88 Ohio St., 181, at page 187, language which they construe as a finding of that court to the effect that the flood of 1913 throughout the state of Ohio was “an act of God,” and counsel then say, on page 37 of the brief:
“If this court does not know already that the flood of 1913 was 'an act of God,’ certainly the decision of the Supreme Court that it was, is binding upon and will govern this court.”'
One would think from reading this portion of the brief that there was some ground of complaint against the charge upon this subject, but upon examination of the charge we find that the court, upon page 383 of the bill of exceptions, used this language in its charge to the jury:
“The flood of March, 1913, in some of its aspects máy properly be considered by you as such an act of God.”
*131 From a reading of the entire brief, however, it fairly appears that the thing complained of by counsel in this connection is that the court refused to charge that the damage to the cotton was an “act of God.” Such a charge would have been erroneous under the evidence in this case, pages of the record being devoted to testimony adduced by plaintiffs tending to show that notwithstanding the unusual' and almost unprecedented flood in the Ohio river, the railroad company, as the custodian of these goods, had ample time and opportunity to protect them from the ravages of the flood and to remove them to a place of safety. It was shown that after warnings had been received through the weather bureau, and other sources, of an unexpected rise in the Ohio river, 409 tons of freight had been received and stored by the company through its regular employes in the large warehouse near by. The purpose of this and other evidence was to place fully before the jury the facts and conditions existing, in order that it might be determined whether or not the claim of the railroad company, that it did all that could reasonably be expected of it for the protection of the cotton, in view of all the • circumstances and conditions, was true. All this evidence so offered was relevant and material under the law, as well stated in the case of Backus & Sons v. Start et al., 13 Fed. Rep., 69, the syllabus of which reads:
“3. Warehousemen are not required to provide against an unprecedented emergency; but if they have reason to expect such an emergency, they are bound to take such precautionary measures to prevent loss as prudent and skillful men in the like *132 business and under like circumstances might be expected to use.
“4. They are not bound to have or keep on hand special facilities to meet and overcome possible but unexpected and unprecedented emergencies, which are included in what is called the 'act of God;’ but if imminent danger presents itself, to use such appliances and means as the ordinary and safe conduct of their business requires them to possess, and such as are at hand, and to. use them with such promptness as would be expected of ordinarily careful and prudent men in regard to their own, or property entrusted to their care under like circumstances.”
Section 8459, General Code, thus defines in part the duties of a warehouseman:
“A. warehouseman may insert in a receipt, issued by him, any other terms and conditions, provided that such terms and conditions shall not:
'T. Be contrary to the provisions of this chapter.
“2. In any wise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.”
And in H. A. Johnson & Co. v. Springfield Ice & Refrigerating Co., 143 Mo. App., 441, it is held:
“A warehouseman cannot escape liability for damage from an unprecedented flood to goods stored in his warehouse where it appears that his own negligence, commingling with the act of God as an active and co-operative element, resulted in *133 damages to the goods. The warehouseman would be excused for failure to exercise ordinary care only in cases where the superior force of the act of God would have produced the same damage whether the warehouseman had been negligent or not.”
From Memphis & Charleston Rd. Co. v. Reeves, 10 Wall., 176, 179, we quote the following language from the charge of the trial court in that case, which was held by the reviewing court to be a correct charge:
“When the damage' is shown to have resulted from the immediate act of God, such as a sudden and extraordinary flood, the carrier would be exempt from liability, unless the plaintiff shall prove that the defendant was guilty of some negligence in not providing for the safety of the goods. That he could do so must be proven by the plaintiff, or must appear in the facts of the case.”
These excerpts correctly state what we conceive to be the law applicable to this case. We now quote from the charge of the trial court in the instant case, at pages 383-4-5 of the bill of exceptions :
“An extraordinary flood of such volume and height and coming with such rapidity as to be almost if not quite unprecedented, is sometimes, referred to as an act of God. By this term is meant an occurrence directly and entirely due to natural causes operating without human intervention and such that because of its magnitude or the suddenness of its coming, it could not have been foreseen in the light of ordinary knowledge.
*134 “The flood of March, 1913, in some of its aspects may properly be considered by you as such an act of God.
“The question, however, in this case remains for your determination, whether the defendant under the circumstances existing for the period shortly prior to the stage of flood which reached plaintiffs’ goods, and with the knowledge of conditions, which defendant had or should have had at that time, exercised ordinary care for these goods stored in the so-called fruit house and old southern depot warehouses.
“If the defendant had or should have had knowledge of, or reasonable ground to anticipate a stage of water in excess of sixty-two feet, at about which height plaintiffs’ cotton was originally stored, and after such knowledge was had or should have been had, failed to use facilities reasonably available and such as would have been employed by ordinary prudence to protect the cotton from such stage of flood as was reasonably to have been anticipated, then defendant- was negligent. Defendant, however, was not bound to keep on hand and immediately available facilities to meet an emergency not reasonably to have been anticipated, but only to ‘ take such precautionary .measures to prevent loss as prudent and skillful men in a like business and under like circumstances would ordinarily take.
“The standard of ordinary care is in law an unvarying standard, but manifestly that action or inaction which will amount to ordinary care depends on the fact and circumstances of each particular case. Ordinary care is a course of ordi *135 nary prudence, commensurate with the danger reasonably to be anticipated.
“Accordingly, if you should find that at the time in question the defendant was wanting in the duty of care incumbent upon it with respect to plaintiff’s goods, the defendant would not be excused by the mere fact of the occurrence at that time of an act of God, manifested in the flood. In such event you must determine further whether such negligence on the part of the defendant if the defendant was negligent, or such act of God or other cause was the operative or proximate cause of the damage. If defendant was negligent and such negligence operated proximately and directly to cause damage to plaintiff’s cotton, the defendant is responsible for such damage.
“If, however, you should find that the flood in the extent, rate of increase and height was such as was not reasonably to have been anticipated by defendant in time to provide against damage to plaintiffs’ goods by measures of ordinary prudence in view of facilities reasonably accessible, and if as the flood increased the defendant took such precautions as were called for by ordinary prudence, then the damage which actually resulted is chargeable to what has been termed an act of God and not to negligence on the part of defendant and defendant cannot be held to answer therefor.”
This, we think, is a clear and complete statement of the law considered both as an abstract proposition and as touching the issues in this case.
There were a great many special charges requested by each of the parties in the trial below, and most of the argument of counsel for plaintiff *136 in error, both orally and by brief, was addressed to alleged errors of the court in ruling upon these special requests. We have found that the rulings of the learned judge upon each and all of these requests were consistent with the correct view of the law entertained by him and as expressed to the jury in the portion of the general charge above set out.
As before stated, it was the contention of counsel for plaintiff in error, both in this court and in the court below, that under the evidence in this case a verdict should have been instructed for the defendant at the close of all the evidence, on the theory that the flood in the Ohio river in the year 1913, which caused this damage, was an “act of God.” We have already made clear our views that such an act on the part of the trial court would have been erroneous and wholly unjustified by the facts in this case. Cases are cited in which it has been held by eminent authorities that the evidence not only justified but required such action by the trial court. Other actions for damages by flood have, been cited where the judgments of the nisi prius courts have been reversed for the refusal of the trial judge to charge that the damage caused by the flood was an “act of God.” Some of these cases grew out of the great flood at Kansas City on May 31, 1903. The damage at that time and place was caused by joint floods in the Missouri and Kaw rivers, which unite at or near Kansas City. The weather reports predicted the rise in the Missouri river, but the rise in the Kaw river was not only wholly unexpected but was unprecedented. The weather bureau had received no *137 advices as to the water in the Kaw river. There was nothing in the telegraphic reports to indicate an unprecedented volume of water in the Missouri river.
In Wertheimer, Swartz Shoe Co. v. Missouri Pac. Ry. Co., 147 Mo. App., 489, 126 S. W. Rep., 793, which is one of these flood cases, the court in its opinion, describing this flood, says at page 494:
“This rise had been gradual for several days and was due to heavy rains over the States of Missouri and Kansas having swollen the Missouri and Kansas rivers. But similar overflows had occurred before in the river bottom at Kansas City without damaging property, and similar warnings had been given by the weather office. On May 31st an overwhelming flood’ occurred there in consequence of a vast volume of water pouring from the Kaw river in a torrent strong enough to turn back the current of the Missouri river and cause that stream to flow for a few miles towards its source. This flood was unexpected even by the official in charge of the government weather office in Kansas City, as he testified. The witness said he had sent out bulletins and warnings to railroad companies and others from day to day as the waters rose, giving notice of danger, but the flood stage of thirty-five feet was unexpected.”
The court held in that case “that the loss was due to the flood, and not to the railroad’s failure to remove the goods to a place of safety.”
Another case cited, where it was held as a matter of law that the flood damage was caused by an “act of God,” was Herritt Creamery Co. v. Atchison, T. & S. F. Ry. Co., 139 Mo. App., 149, *138 122 S. W. Rep., 322. This action arose out of the same Kansas City flood, and the court found that the flood on May 30 and 31, 1903, at the junction of the Kaw and Missouri rivers, Kansas City, Missouri, was an “act of God,” and that a carrier was not liable for loss of freight by such flood. And in its opinion the court said, at page 152:
“Plaintiff’s entire case turns on a mere question of fact: that is, did defendant know or could it have known of the coming flood? * * * The Kaw suddenly rose, at Topeka and above, — miles from Kansas City, in addition to its already overflowed banks, and much stress is put upon the knowledge which defendant’s officers had obtained by telegraph of the coming of these waters. But it was shown that the amount of rise which these additional waters would have caused at Kansas City would have left plaintiff’s butter unharmed in the position in which defendant had placed it. The cause of thé great destruction and the overwhelming nature of the flood arose, in great part, from the unexpected volume of water added to the already flooded Missouri. The result of the floods of both rivers joining at Kansas City caused the great destruction of property which that catastrophe brought about in such short time that few escaped its fury.”
We cite only these two cases to show that where courts have decided as a matter of law that flood damage was an “act of God,” the uncontroverted facts would admit of no other conclusion.
Such is not true in this case, the facts of which differ very materially from those just narrated from the Kansas City case. This flood was neither *139 unprecedented nor unexpected. The evidence does show, we think, that some two or three days after the first warnings were received by the railroad company and others the rise was very rapid,— unexpectedly so, — but the evidence also shows that during all this time the railroad company, the warehouseman, in this case, was anticipating danger to the storage-shed and its contents and was directing its efforts along the line of preparing for the expected flood, although what was done did not inure in any way to the benefit of Mr, Wuest in saving his cotton. The case presented to us is not similar in a legal aspect to the cases growing out of the Kansas City flood.
The flood which reached this cotton and linters and caused this damage was neither unexpected nor unprecedented. The damage was caused many hours after repeated warnings had been given by the weather bureau and had been brought to the knowledge of the railroad company. Such being the case, the question as to whether the railroad company, in the exercise of ordinary care, did all that could be reasonably expected of it for the protection of the cotton, was one for the jury. This question was submitted to the jury under a clear and correct charge by the court.
Finding no errors in the proceedings of the court below', its judgment will be affirmed.

Judgment affirmed.

Jones, Oliver B., and Gorman, JJ., concur.