MRS. J. W. FORD v. WABASH RAILWAY COMPANY ET AL.; ST. LOUIS TRANSFER COMPANY, Appellant.—300 S. W. 769.

Division Two, December 12, 1927.

*Guy A. Thompson* and *Marvin E. Boisseau* for appellant.

*Abbott, Fauntleroy, Cullen & Edwards* and *Anderson, Gilbert & Wolfort* for respondent.

HIGBEE, C.—On a trial of this cause in the Circuit Court of the City of St. Louis on October 5, 1922, the jury found a verdict for the plaintiff on both counts of plaintiff's amended petition, with interest, in the total sum of $1672.62, against the St. Louis Transfer Company, but found for the other defendants, and from a judgment thereon the St. Louis Transfer Company appealed to the St. Louis Court of Appeals where the judgment was reversed. Judge ALLEN dissented on the ground that the decision was contrary to decisions of this court, and at his request the cause was certified to this court for final determination. We adopt, in part, appellant's statement in the Court of Appeals, making a few slight changes.

This suit was instituted on November 16, 1918, by the plaintiff for the purpose of recovering from defendants damages alleged to have been caused to certain property while in their possession. Her amended petition is in two counts. The first count, after alleging certain formal matters with reference to the capacity in which defendants are being sued, states that on or about the 23rd day of August, 1918, plaintiff became and was a first-class passenger on a train of the Wabash Railway Company at Chicago, Illinois, operated by the Director General of Railroads, and thereby became entitled to transportation from Chicago, Illinois, to St. Louis, Missouri, over the lines of the Wabash Railway Company and the Terminal Railroad Association of St. Louis; that as such passenger she delivered, in good order and condition, to the defendants, for transportation from Chicago to her residence in St. Louis, her baggage, goods and chattels, which were itemized in her petition and which had the value set opposite each item, amounting to a total of $1448.38. The petition then alleges that the defendants undertook and agreed, for value received, as successive carriers, to transport said goods promptly and to deliver them in as good condition as they were in at the time they were delivered to the defendants for transportation, and that it was the duty of said defendants under the law so to transport and deliver the same; that in violation of their contract and undertaking and their duty in that behalf, the defendants negligently and carelessly transported and delivered said goods so that when they were received by the plaintiff on the 25th day of August, 1918, they were wholly destroyed and of no value whatever. The petition also alleges that these articles were all the necessary baggage and wearing apparel of the plaintiff, of the total value of $1448.38; that she demanded payment of the defendants of this sum on November 16, 1918, and at other times, and judgment is asked against the defendants for that sum.

The second count makes the same allegations as the first count except that the damage is therein alleged to have been done to the property of plaintiff's husband, J. W. Ford, under exactly the same circumstances, said damage amounting to the sum of $195. This count also alleges an assignment by J. W. Ford of his cause of action or claim on account of the damage to these goods to the plaintiff and judgment is prayed against the defendants on this count for the sum of $195, together with interest thereon since November 16, 1918.

The answer of the defendant, St. Louis Transfer Company, to each count of the plaintiff's petition, consists of a general denial, together with the following affirmative defenses:

1. That this action was not instituted and is not being prosecuted in the name of the real party in interest; that the real party in interest is the St. Paul Fire & Marine Insurance Company.

2. That if the goods and chattels itemized in the plaintiff's petition, or any of them, were damaged, said damage was not sustained while the goods and chattels were in the possession or control of this defendant, but while in the possession of one of the other defendants herein.

3. That if said goods and chattels were damaged as averred in plaintiff's petition, such damage was sustained on the 24th day of August, 1918, and was the result of an act of God in that on said 24th day of August, 1918, between eleven A. M. and noon of said day, there was an unexpected cloudburst of such volume that the sewers and the natural drainage of the streets and soil of the city of St. Louis could not carry water away as rapidly as it fell and the station grounds, platforms and baggage rooms and premises of the defendant, Terminal Railroad Association of St. Louis, became flooded and submerged, and that if the property mentioned by the plaintiff in her petition was damaged, such damage was caused solely by said *vis major* or act of God.

The reply was a general denial.

At the trial judgment was rendered in favor of all the defendants except the St. Louis Transfer Company, against whom the plaintiff prevailed, and defendant has brought the case to this court on appeal.

The facts are very simple.

The plaintiff and her husband both testified in effect that in the summer of 1918 they were living at 5933 Clemens Avenue, in St. Louis, Missouri; that they went to Mackinaw Island for a summer vacation, staying there three or four weeks, and returned to St. Louis by way of Chicago. On the evening of August 23, 1918, they left Chicago for St. Louis and had five trunks and two golf bags, the trunks containing all of their clothing, hats and personal wearing apparel. They arrived in St. Louis on the morning of August 24, 1918, coming to St. Louis by way of the Wabash Railroad.

Before leaving Mackinaw Island, they had checked their trunks from there to Chicago, and at Chicago they rechecked their trunks on the Wabash Railway to St. Louis. Mr. Ford looked after the rechecking of the trunks. After their arrival in St. Louis, they walked home from the Delmar Avenue Station, and about ten o'clock that morning Mr. Ford went down town. On the way to town he left his baggage checks with an agent of the St. Louis Transfer Company at the Union Station, and directed him to deliver the baggage to his residence. He paid to the St. Louis Transfer Company whatever the charges were for the delivery of this baggage. Three of the trunks were delivered that same evening, the other two being delivered early Monday morning, August 26th.

When the trunks were delivered at plaintiff's residence they were opened, and it was found that the contents were water-soaked, and, according to the testimony of the plaintiff, entirely destroyed. Mrs. Ford estimated the damage to her trunks and the contents thereof at the sum alleged in the petition, and the damage to Mr. Ford's wearing apparel in the trunks was also estimated at the amount alleged in the petition. There was further testimony to the effect that letters had been written by the St. Louis Transfer Company stating that these goods had become water-soaked while on their platform at the Union Station, as a result of a rainfall which flooded the entire premises about noon of August 24th. There was also testimony that Mr. Ford had assigned whatever cause of action he may have had as a result of damage to his property to his wife, the plaintiff herein. After this showing, the plaintiff rested and instructions in the nature of demurrers to the evidence were presented by all the defendants, which instructions the court refused to give.

On the 24th day of August, 1918, at 11:20 A. M., there was a violent rainstorm all over the city of St. Louis, and particularly in the vicinity of the Union Station. So violent was the storm that the water ran from Market Street through the main entrance of the Union Station, through the concourse, barber shop, bank and hotel, onto the midway, and then continued south across the railroad tracks and baggage room. There were at that time one or more employees of the St. Louis Transfer Company in their office and about the platform. Within a few minutes after the rain started the water came flowing down across the tracks and across the baggage platform and in about fifteen minutes rose to a depth of fourteen or fifteen inches on the platform occupied by the St. Louis Transfer Company where the plaintiff's baggage was at that time. The rain lasted for about one hour, and the first intimation that any employees of the St. Louis Transfer Company had that there was any danger from the water was when it came flowing across the platform occupied by them. They thereupon began to search about for trucks or some-

thing else upon which they could place the trunks on their platform so as to get them out of the water.

. When the rain began to fall the Terminal Railroad Association became anxious about their baggage, most of which was in the subway. Mr. O'Toole, their general agent, went to the subway when it . began to look as though there would be a heavy rain and ordered the United States mail bags and other baggage down in the subway to be elevated to the track level. The Terminal Railroad Association had a number of trucks which were three or three and one-half feet in height, and the baggage was all placed on these trucks and brought up to the platform above described and left standing on the trucks. At the same time what other trunks were on the platform were placed on the trucks which they had available. After the platform of the St. Louis Transfer Company was flooded, some of its employees attempted to borrow some trucks from the Terminal Railroad Association, but were unable to do so at first because they were all in use. After a few minutes, two or three trucks were obtained and the baggage was all placed on these trucks. Some of it, however, had been water-soaked before they could get to it. The transfer company had no trucks of its own, as they are not used or necessary in its handling of the baggage.

Several employees of the St. Louis Transfer Company and the Terminal Railroad Association, who had been employed at the Union Station for twenty years or more, ever since the station was built, testified that never before was water known to come on this baggage platform. On June 16, 1912, July 14, 1912, and July 1, 1913, there had been rains which flooded the subway and did some damage to the baggage located there. This subway was practically twenty feet below the track level. There had never been any rain since the station was built in 1894 up to the trial of this case that had ever flooded the baggage platform. The city gauge at 613 North Garrison Avenue, and within the district where the surface water would be carried toward the Union Station, showed a rainfall of 4.56 inches from 9:15 A. M., August 24, 1924, to 9:15 A. M., August 25. The maximum intensity of rain for an hour's period during this time was 3.6 inches, which fell from 11:20 A. M., to 12:20 P. M., August 24. This is the largest record of rainfall that the sewer department has ever had for an hour's period at any rain gauge in the city of St. Louis.

At the close of all the evidence the various defendants asked the court to declare as a matter of law that there could be no recovery by the plaintiff. The court gave this instruction with respect to all defendants except the St. Louis Transfer Company, appellant here, against which the cause was sent to the jury, and the jury returned its verdict in favor of the plaintiff on both counts of her petition.

I. Appellant assigns error in the refusal of the demurrer at the close of all the evidence, because (a) the damage was caused by an act of God, and (b) there was a failure of proof; the plaintiff cannot sue on one cause of action and recover on another.

According to all of the evidence, including that of the Transfer Company, Mr. Ford had delivered the checks to the appellant and it had taken charge of the baggage and had placed it on its platform in the Union Station in the city of St. Louis on the morning of August 24, 1918, and it had assumed the relation of common carrier to Mr. and Mrs. Ford and had been paid its charges for delivering the baggage at their home in St. Louis.

The uncontradicted evidence is that between 11 A. M. and 12 M. of that day, 3.6 inches of rain fell, exceeding the capacity of the sewers to carry it off, and the water rose on the platform where the five trunks were placed, to a depth of fourteen or fifteen inches. It may be conceded this was an unprecedented flood, exceeding any downpour that had occurred since the construction of the Union Station in 1894, or in the history of St. Louis, for that matter, and that it was what is usually called an act of God. In 4 Ruling Case Law, page 713, sec. 186, it is said:—

"The instances most often mentioned in the books are, as has been seen, lightning, tornadoes, storms or tempests, earthquakes and sudden squalls of wind. In the same category would come any unprecedented flood or sudden inundation which no human power could stay and no foresight or prudence anticipate. However, to constitute an act of Providence it seems that a storm, flood or freshet need not be unprecedented, if it is unusual, extraordinary and unexpected. Thus, it has been held that a carrier is not liable for damage caused by a flood such as occurs but twice in a generation, nor is the fact that such a flood has occurred once in each of two preceding years sufficient to make it liable."

See, also, 1 Corpus Juris, 1172, and cases cited: Lamar Mfg. Co. v. Railroad, 117 Mo. App. 453, 93 S. W. 851, and Wertheimer, Swartz Shoe Co. v. Railroad, 147 Mo. App. 489, 126 S. W. 793.

But it is the general rule that "if the defendant's negligence concurred with that of another, or with the act of God, and became a part of the direct and proximate cause of the injury, although not the sole cause, the defendant is still liable." [Willi v. U. Rys. Co., 205 Mo. App. 284, 224 S. W. 86, and cases cited.]

"When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the

operation of the rules applicable to the act of God. Thus if a party is in default for not performing a duty, or not anticipating a danger, or where his own negligence has contributed as the proximate cause of the injury complained of, he cannot avoid liability by claiming that it was caused by an act of God." [1 C. J. 1175.]

In such case it is said: "The carrier is bound to do his utmost to protect the goods committed to his charge from loss or damage, and if he fails in this regard he becomes liable from the nature of his contract." [4 R. C. L. 710.]

The evidence discloses that the appellant's employees saw the water extending over the platform where the five trunks were deposited; it rose till it stood fourteen or fifteen inches deep. They say they did not use trucks in handling baggage and could get none. That was a question of fact for the jury to pass upon. But concede the claim they could get no trucks nor anything on which to put the trunks, could they not have removed the baggage to a place of safety? Or could they not have piled the trunks one on another and so have saved four of them? Water a few inches deep presumably could not have saturated the contents of the trunks to the top unless the trunks were allowed to remain in the water for a considerable time. For all the evidence shows the appellant's employees impotently folded their hands and did nothing. Late that day they delivered three of the trunks, after the contents were completely saturated, and the other two they delivered the following morning. If they had telephoned plaintiff of the conditions and their inability to save the trunks from saturation or to deliver them, she might have been able to have sent a truck and got them home in time to have averted a total loss. The burden was on the appellant to prove the injury was caused by an act of God. This it sought to prove by oral testimony. Whether the defendant's negligence concurred with the act of God in causing the injury to the baggage was a question of fact. The court could not assume that the defendant's evidence "was true, satisfactory or convincing to the jury simply because no one by words contradicts what has been uttered." [Gannon v. Laclede Gas Co., 145 Mo. 502, syl. 5, 46 S. W. 968.] The defendant's evidence shows that the employees of the Terminal Railroad Association got all its baggage, both in the subway and in the track level, cared for, without damage. We think the demurrer to the evidence was properly overruled.

II. The contention that there is a failure of proof and that plaintiff cannot sue upon one cause of action and recover on another is based on the allegation in the petition that the baggage was delivered to the defendants at Chicago and that they undertook, for value received, to transport and deliver it at plaintiff's residence in St. Louis, etc.

The evidence is that the baggage was delivered to the Wabash Railway Company at Chicago and checked to St. Louis; that on arrival there Mr. Ford delivered the checks to an agent of the St. Louis Transfer Company. As said by appellant, this was a new and independent contract with the transfer company by which it undertook to carry the baggage and deliver it at plaintiff's residence, and constitutes a variance between the allegation and the proof. [1 C. J. 364, citing Ingwerson v. Railway Co., 205 Mo. 328, 103 S. W. 1143.]

The proof that after the arrival of the baggage at the Union Station, Ford delivered the checks to the transfer company and it undertook upon a new consideration to deliver the baggage at plaintiff's residence in St. Louis, went in, not only without objection, but was gone into in detail on cross-examination by appellant. Appellant's counsel did not ask that it be withdrawn, nor file an affidavit of surprise.

In Tebeau v. Ridge (en Banc), 261 Mo. 559, 170 S. W. 871, Judge FARIS quoted approvingly from Sawyer v. Wabash Railway Co., 156 Mo. 476, 57 S. W. 108:

"The parties may try the case as if the omitted averment was in the petition or other pleading, and it is perfectly competent for the court even after verdict to amend in accordance with the proofs. In this case it would have been entirely proper for the court in aid of the verdict to have permitted the petition to have been amended, if defective, and as all the facts are before this court we will, if necessary, treat it as amended. [Darrier v. Darrier, 58 Mo. 222.]

"Our statute of amendments is very broad, and we are forbidden to reverse any judgment 'for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a verdict.' [Sec. 2113, R. S. 1889; Seckinger v. Mfg. Co., 129 Mo. 1. c. 598; Grove v. Kansas City, 75 Mo. 672; Thompson v. Kessel, 30 N. Y. 282.]' "

The appellant treated the petition at the trial as if the contract had been properly pleaded. If the objection now pressed had been made at the trial, plaintiff would have been entitled to amend the petition to conform to the facts proven, and we will treat the petition as having been properly amended. [State ex rel. Smith v. Trimble, 315 Mo. 173, 285 S. W. 729, construing Sections 1276, 1513, 1550 and 1551, R. S. 1919.]

III. On cross-examination of Mr. Ford he was asked: "Is it not a fact that you were paid the entire amount of your loss by the St. Paul Fire & Marine Insurance Company and that you signed a paper assigning your right of action to them?" On objection the court said: "Yes, that is objectionable. You speak of his assigning

a paper or his interest. The paper speaks for itself." Mr. Boisseau: "I offer to prove by this witness that the amount of both his and Mrs. Ford's loss of baggage was paid to them by the St. Paul Fire & Marine Insurance Company and that they are not any longer the real parties in interest in this case." An objection to this offer was sustained and an exception saved.

After a general denial, the first paragraph of the appellant's answer has this averment: "1. That this action was not instituted and is not being prosecuted in the name of the real party in interest; that the real party in interest is the St. Paul Fire & Marine Insurance Company."

This is not an averment of a fact, but of a mere legal conclusion and tenders no issue. "Facts and not evidence nor conclusions of law, must be distinctly stated." [Nichols, Shepherd & Co. v. Larkin, 79 Mo. 272.] "The central idea of code pleading is that an answer should not be evasive, but should meet the allegations of the petition fairly and squarely, thus presenting sharply defined issues for the triers of the facts to pass upon." [Snyder v. Free, 114 Mo. 367, 21 S. W. 847; Sec. 1232, R. S. 1919.]

The offer of proof was not admissible under the pleadings. Even if the answer had pleaded that the loss on the baggage was covered by insurance, that it had been paid by the insurer, and that the insured had assigned their causes of action to the insurers, it was not competent to prove these facts by parol, that not being the best evidence. The objection was properly sustained. Appellant cites in support of its contention, Swift & Co. v. Railroad, 149 Mo. App. 526, 131 S. W. 124, but we need not discuss the questions considered in that case.

IV. The court instructed the jury for the plaintiff as follows:

"1. The court instructs the jury that if you believe and find from the evidence that the property of the plaintiff and her husband in question was damaged by water, then your verdict must be for the plaintiff on the first and second counts, unless you further find from the evidence that the damage was caused by an act of God, as defined in the other instructions herein, and unless you further find and believe from all the evidence that the defendant, St. Louis Transfer Company, exercised such care as an ordinarily prudent person would have exercised in the same or similar circumstances.

"2. You are instructed that when two causes combine to produce an injury, both of which causes are, in their nature, proximate and both contributing to an injury, the one being a negligent act of the defendant and the other some occurrence in the nature of an act of God, for which neither party is responsible, then the defendant is liable for such loss as is proximately caused by his own negligent act

concurring with the act of God, provided the loss would not have been sustained by the plaintiff but for such negligent act of the defendant, if any, and in this case, if you believe from the evidence that before the baggage was damaged by water, the agents and servants of defendant knew, or by the exercise of ordinary care could have known, that said baggage was likely to be damaged by water if left in the position it was then in; and if you further believe that this knowledge or opportunity to know, if you so find, came to said agents in time to enable them, by the exercise of ordinary care, to place the baggage in a place where it would not be reached by water, and that said agents and servants negligently and carelessly failed to put said baggage in a place where it would be secure from the inflowing water, then you should find for plaintiff, even though you believe the rainfall was an act of God.

"3. The term, 'act of God,' in its legal sense, applies only to events in nature so extraordinary that the history of climatic variances and other conditions in a particular locality afford no reasonable warning of them, and if the jury believe and find from the evidence that the damage could have been reasonably anticipated or prevented by a reasonable degree of care and diligence, such as an ordinarily prudent person would use in the same or similar circumstances, then whatever damages, if any, the plaintiff or her husband may have suffered cannot be ascribed to an act of God so as to exempt the defendant from liability.

"4. The court instructs the jury that the burden is upon the defendant to satisfy you that the water in the baggage room was caused by an act of God as defined in·other instructions, and if the defendant has not satisfied you by a preponderance of the evidence that this water was caused to come into the station by an act of God as defined in the other instructions, then you cannot find for the defendant on that issue.

"5. The court instructs the jury that if you believe and find for the plaintiff on the first count you will assess her damages at such sum as you believe from the evidence the property of the plaintiff was damaged, not in excess of $1448, and in your verdict you may allow interest from the 16th day of November, 1918, at the rate of six per cent per annum."

Instruction 6 authorized the jury to allow interest if they found for plaintiff on the second count.

It is contended that the evidence shows that the damage was caused by an act of God and that the court should have instructed the jury that the burden was on the plaintiff to show that some specific act of negligence on the part of the defendant concurred therewith, otherwise the verdict must be for the defendant. Appellant cites Davis v. Railroad, 89 Mo. 340, 1 S. W. 327, holding (Syl. 4) that where

from the plaintiff's own evidence it appears that the act of God caused the injury to the goods the carrier is exonerated from liability unless plaintiff shows that the carrier was guilty of some specific negligence which actually cooperated to produce the loss. On page 350, the court said:

"If, therefore, the plaintiff shows delivery of his goods to the carrier, and a subsequent loss thereof, he need do no more. This is a sufficient statement, ordinarily, of his cause of action, and a showing, to that effect, is sufficient to make out a prima-facie case. The *onus probandi* is then on the carrier to bring the case within one or the other of said exemptions. If, in establishing his said defense, facts and circumstances also appear tending to show that his negligence co-operated to produce the damages, he must, we think, bear the burden of satisfying the jury, that they did not directly contribute to the damage, and he is not relieved of liability unless he so shows. In other words, when the burden is cast on him, he must make a case in which no negligence of his own appears from the evidence."

The appellant's evidence shows that it received the trunks as a common carrier and for a consideration undertook to deliver them; that its employees saw the water rising on the platform where the trunks were deposited. The showing by the appellant is that it had no trucks and used none in its business; it did not attempt to show that it could not have saved the trunks by the exercise of ordinary care on its part; e. g., by stacking them one on another or by putting them in a safe place. Appellant's evidence showed that at the same time the Terminal Railroad Association, by the exercise of ordinary care, saved its baggage. The appellant did nothing to avert or minimize the damage. It did not show that its own negligence did not directly contribute to cause the damage. The instructions are in harmony with these views and with Willi v. U. Rys. Co., and other authorities cited, supra.

V. Error is assigned in giving instructions numbered 5 and 6. It is contended that interest is not recoverable in an action of this character. Citing Jordan v. C. B. & Q. Railroad Co., 206 Mo. App. 56, 226 S. W. 1023. On page 66, Judge TRIMBLE said:

"The third amended petition does not place plaintiff's cause of action on a breach of contract, but upon a negligent failure to perform its common-law duty. The case is one in tort and not on contract. There was no conversion or seizure of the property so as to bring it within the purview of Section 5430, Revised Statutes 1909." [Sec. 4222, R. S. 1919.]

It was held interest was not recoverable. In DeSteiger v. Railroad Co., 73 Mo. 33, it was held that interest is not recoverable in an ac-

tion to recover damages for hay burned by a fire which escaped from defendant's locomotive. In Gerst v. St. Louis, 185 Mo. 191, 84 S. W. 34, it was held interest will not be allowed "in actions *ex delicto*, where no pecuniary benefit could accrue by reason of the injury," citing DeSteiger v. Railroad, supra, and other cases.

In Dunn v. Railroad Co., 68 Mo. 278, an action for damages for negligence in the transportation of live stock, it was held that interest might be allowed on the amount of damages sustained, to be computed from the institution of the suit, citing Gray v. Packet Co., 64 Mo. 50.

In Humphreys v. Railroad, 191 Mo. App. 722, 178 S'. W. 233, an action for loss of hogs during transportation, it was held that "it is established by the prior course of decision that interest is recoverable in cases of this character as a matter of right," citing many cases.

In Goodman v. Railway Company, 71 Mo. App. 460, an action against a carrier for damages for injury to goods shipped, it was held that interest from the date of the shipment may be allowed as a part of the damages, since the action is for breach of contract of safe shipment. On page 463, Judge ELLISON said:

"It is also contended that error was committed in directing the jury to allow interest on the amount of damages shown. The point is not well taken. In this State there are cases where interest is recoverable as a matter of right. And others where the jury may or may not allow interest as they see fit. [State ex rel. v. Hope, 121 Mo. 34.] There are yet others where interest cannot be allowed. To the latter class belong damages for killing stock, or setting out fires. [DeSteiger v. Railway, 73 Mo. 33; Meyer v. Railway, 64 Mo. 542; State ex rel. v. Harrington, 44 Mo. App. 297.] But this case seems to belong to the first class. It seems to have been so ruled in the cases of Dunn v. Railway, 68 Mo. 278, and Gray v. Packet Co., 64 Mo. 50. Defendant has cited us to State ex rel. v. Hope, supra, in support of his contention that the jury should not have been directed to allow interest. We think that case is not in point. That case gives an authoritative and undoubtedly correct interpretation to the statute. [R. S. 1889, sec. 4430.] But that case was where goods had been seized and converted, and though the Supreme Court had not, for many years (possibly not since its enactment), been given effect to the statute, yet it must now be heeded in all cases embraced within its terms. But, as before stated, we think this case is not within its meaning. This case is really for damages for breach of contract of safe shipment. It falls closer to such in character of cases as Padley v. Catterlin, 64 Mo. App. 629. And it is at any rate governed by the Dunn and Gray cases, supra."

In State ex rel. v. Seavey, 137 Mo. App. 9, 119 S. W. 17, Judge JOHNSON said: "Thus it will be seen that the Supreme Court and

both Courts of Appeals have held that in suits of this character, interest is recoverable as a matter of right. Necessarily the rule must rest on the idea that an action on an attachment bond is *ex contractu* and not *ex delicto,* though it requires the commission of a tort to constitute a breach of the contract.'' Citing Goodman v. Railway, and other cases.

The ruling in the Goodman case was cited approvingly in Kemper Mill & Elevator Co. v. Hines, 293 Mo. 107, 239 S. W. 803.

The instructions that the jury might allow interest from the date suit was instituted were properly given.

VI. The court refused to instruct the jury ''that unless you find from the evidence that plaintiff made such a contract with the defendant St. Louis Transfer Company at the time she checked her baggage in Chicago, the plaintiff is not entitled to recover herein against defendant St. Louis Transfer Company, even though you may further find that her baggage was damaged by reason of the negligence of said defendant.'' This instruction was predicated on the theory of the variance between the allegations and proof and was properly refused because the variance was waived.

Other matters complained of in the motion for new trial are not included in the assignments of error. The judgment of the circuit court is affirmed. *Henwood, C.,* concurs; *Davis C.,* not sitting.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.

### ON MOTION FOR REHEARING.

HIGBEE, C.—1. The motion for rehearing assigns several errors in the opinion. It is said that ''the record distinctly shows that the defendant's employees did not and could not see the water coming until it began flowing around their feet and it came in a veritable wall about four inches deep; . . . that they immediately sought to get something on which to elevate the baggage and within four or five minutes they had all the baggage on trucks borrowed from the Terminal Railroad Association. We cannot conceive how it can be said that defendant's employees 'impotently folded their hands and did nothing' to prevent the damage; nor how such evidence can raise any question of negligence whatever.''

In appellant's statement quoted in the opinion it is said:

''Within a few minutes after the rain started the water came flooding down across the tracks and across the baggage platform

and in about fifteen minutes rose to a depth of fourteen or fifteen inches on the platform occupied by the St. Louis Transfer Company where the plaintiff's baggage was at that time. The rain lasted for about an hour and the first intimation that any employees of the St. Louis Transfer Company had that there was any danger from the water was when it came flooding across the platform occupied by them. They thereupon began to search for trucks or something else upon which they could place the trunks on their platform to get them out of the water.''

The opinion continues: ''But concede the claim they could get no trucks nor anything on which to put the trunks. Could they not have removed the baggage to a place of safety? Or could they not have·piled the trunks one on another and so have saved four of them? . . . For all the evidence shows the appellant's employees impotently folded their hands and did nothing.'' ·

Concerning these observations it is said in the motion for rehearing: ''The whole premises was flooded to a depth of fourteen or fifteen inches in less than *five* minutes time. There was no safer place to be found and no such evidence can be found in the record.''

In appellant's statement it is said that in about *fifteen* minutes the water rose to a depth of about fourteen or fifteen inches on the platform which was on the first floor of the Union Station. There was evidence tending to prove that appellant was unable to borrow trucks on which to place the baggage. The Union Station is a large building consisting of several stories. The· Terminal Railroad Association hoisted mail sacks and baggage to the first floor and after some time loaned trucks to the appellant. Might not the appellant, in the exercise of reasonable diligence, have hoisted plaintiff's baggage to the second floor, or piled ˙it up until the flood abated? The evidence shows it did nothing. According to the authorities cited in the opinion, ''The carrier is bound to do his utmost to protect the goods committed to his charge from loss or damage, and if he fails in this regard he becomes liable from the nature of his contract.'' Appellant did not, as a matter of law, show it had exercised due diligence when it offered evidence tending to show that it could not secure trucks.

2. Putting the foregoing considerations aside, it must be conceded that the defense relied on the suddenness and volume of the flood and the inability of appellant's employees to get trucks or something else upon which they could have placed the trunks, which were clearly questions of fact. The court submitted these issues to the jury under appropriate instructions and the verdict, having received the approval of the learned trial court, is conclusive.

The evidence on this feature of the case is oral, as we have said, and presented questions of fact solely for the jury. The evidence

for both parties shows the Transfer Company had taken charge of the trunks, had them in its possession and had been paid its charges to deliver them at plaintiff's residence, and that the trunks and their contents became water-soaked while in appellant's possession. Plaintiff made a clear prima-facie case. Appellant undertook to prove by parol testimony that the loss was caused by an unusual flood. This presented an issue of fact with the burden of proof on the appellant. Plaintiff was entitled to have the jury pass upon the weight, credibility and sufficiency of the appellant's evidence, although she offered nothing to contradict it. "Should a verdict be returned against the evidence given in such circumstances, it might furnish a matter for the corrective action of the trial court in a proper case; but not the exercise of the revisory power of an appellate court reviewing the questions of law only." [Schroeder v. C. & A. Ry. Co., 108 Mo. 326, 18 S. W. 1094, and Seehorn v. Bank, 148 Mo. 265, 29 S. W. 886.] "Ordinarily, where the plaintiff produced parol evidence to support his action, the issue of fact should be submitted to the jury. The evidence may be all one way, yet it is for the jury to say whether they believe the witnesses or not. The court has no right to tell the jury they must believe the witnesses." [Dalton v. Poplar Bluff, 173 Mo. 47, 72 S. W. 1068.] "Under our decisions it is within the exclusive province of the jury to pass upon the credibility of the witnesses, and it may refuse to believe any witness or witnesses." [Anderson v. K. C. Ry. Co., 290 Mo. 8, 233 S. W. 203.] See also 38 Cyc. 1516 and 1518.

In Gannon v. Gas Co., 145 Mo. 502, cited in the opinion, syllabi 4 and 5 read:

"4. It is not the province of the trial court, after plaintiff has thus made out her prima-facie case, to sustain an instruction to the jury to find for the defendant, offered at the close of all the testimony, on the ground that defendant's proof is undisputed and unimpeached and is sufficient to overcome the prima-facie case which the conceded and admitted facts make for plaintiff. Nor can this court hold that such an instruction under such circumstances should have been given, after a verdict for plaintiff which has been sustained by the trial court, without assuming the prerogatives which under our Constitution and laws belong to the jury.

"5. The plaintiff is entitled to have the jury determine the credibility of the testimony offered, even though he offer nothing to contradict that presented by defendant. Nor can the court assume as a matter of law that the testimony is true, satisfactory or convincing to the jury, simply because no one by words contradicts what has been uttered."

These rulings are affirmed in St. Louis Union Trust Co. v. Hill, 283 Mo. 282, 223 S. W. 434, and State ex rel. v. Trimble, 307 Mo.

551, 271 S. W. 43, and dissenting opinion of ALLEN, P. J., in the instant case in 266 S. W. 1037.

3. The motion charges error in Instruction 1, in that it "attempts to cover the whole case and direct a verdict, yet it wholly fails to require the jury to find that appellant had the trunks in its possession for carriage; that any contractual relation existed between plaintiff and appellant; that any assignment of a cause of action was made by Mr. Ford to the plaintiff, or any one of several other elements essential to plaintiff's right to recover. And not one of those elements are supplied by any other instruction in the case."

Plaintiff's instructions are set out in the opinion. The sole complaint made of plaintiff's instructions in appellant's brief, except as to the allowance of interest, is: "The court erred in its instructions to the jury. The charge was incomplete and inconsistent."

Our Rule 15 provides that the appellant's brief "shall distinctly allege the errors committed by the trial court and shall contain in addition thereto . . . (2) a statement in numerical order of the points relied on, with citation of authorities thereunder and no reference will be permitted at the argument to errors not specified."

The only complaint made in appellant's brief as to the instructions is "that the charge was incomplete and inconsistent." Under this assignment, whatever it may mean, the complaint now made for the first time of plaintiff's Instruction 1, cannot be considered. Besides it was clearly proven and conceded that the trunks were received by the appellant and in its custody at the time of the flood. This is admitted in appellant's statement. It was also proved that J. W. Ford made a written assignment of his cause of action to Mrs. Ford. The assignment was identified by Mr. Ford when on the witness stand, but it was not further referred to in appellant's statement of the facts or brief.

4. Complaints are also made for the first time of plaintiff's Instructions 2 and 3. They were not made in appellant's brief and will therefore not be considered.

The motion for rehearing is overruled. *Blair* and *Walker, JJ.*, concur; *White, P. J.*, absent.