THE DIXIE WHOLESALE GROCERY, INC., APPELLEE, *v.*
THE BALTIMORE & OHIO WAREHOUSE CO.,
APPELLANT.

(Decided March 11, 1940.)

Mr. Bert H. Long and Mr. Milton M. Bloom, for appellee.

Messrs. Waite, Schindel & Bayless, for appellant.

HAMILTON, P. J. Plaintiff, appellee herein, The Dixie Wholesale Grocery Incorporated, brought an action against defendant, appellant herein, The Baltimore & Ohio Warehouse Company, seeking to recover

damages for loss of certain goods and damage to the remainder, which goods had been stored for hire in the defendant's warehouse. Plaintiff had approximately 8,000 cases of canned goods stored in the warehouse in 1937.

The amended petition is grounded upon Sections 8464 and 8477, General Code, which sections provide:

Section 8464. "A warehouseman, in the absence of some lawful excuse provided by this chapter, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with:

"1. An offer to satisfy the warehouseman's lien.

"2. An offer to surrender the receipt if negotiable, with such indorsements as would be necessary for the negotiation of the receipt; and,

"3. A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the warehouseman.

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

Section 8477. "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

Demand for the goods, as required by the statute, was duly made, as were also an offer to satisfy any lien, and an offer to surrender the receipt if negotiable. There was a refusal or failure on the part of the ware-

houseman to deliver the goods so requested. Some of the goods were lost and the balance was damaged.

Defendant admits the demand for the goods, and pleads the unprecedented and unpredictable flood of January, 1937, as the cause of the damage and loss of the goods, pleads that the warehouse was in no way liable for any loss or damage and was, therefore, unable to deliver as the law required, and that this flood was an act of God, and was the proximate cause of the loss and damage.

Plaintiff denied generally the defense of *vis major*.

The case was tried to a jury, resulting in a judgment in favor of the plaintiff in the sum of $4,950.

The defendant warehouseman appealed on questions of law to this court, claiming several propositions of error intervening in the case, which defendant claims were prejudicial and reversible errors.

It appears that the defendant's warehouse was located near the Ohio river, and was some five or six stories in height. The first floor of the building was used by the defendant company for its personal use, and the second, third, fourth, and fifth floors were used for warehouse purposes, in which many owners of goods had stored their merchandise.

It appears that the plaintiff's property was stored on the second floor of this building, which was 75.5 feet above the low water mark of the Ohio river.

On or about the 20th of January, 1937, there was a rapid rise in the Ohio river, which developed into an unpredicted flood. The defendant company kept in touch with the weather bureau, and was informed at regular intervals of the rise of the river to the flood stage, and then past the flood stage, and that the river was reaching alarming proportions. The highest stage in the record of the river was 71 and a fraction feet. Thus it appears that the second floor, upon which the goods in question were stored, was some four feet above the highest recorded stage.

When it became reasonable to believe that the water might reach the second floor, there was evidence that the defendant began to make some effort concerning the goods, but it is claimed by defendant that on account of the rise of the river and the heavy current, it was unable to remove the goods, if it had had space to store them at a higher level.

The result was that the goods were caught in the flood waters, which rose to 80 feet, causing loss of some of the goods, and damage to the balance.

The chief complaints of error grow out of the giving of plaintiff's special charges, the refusal to give certain of defendant's special charges, and the refusal to submit certain interrogatories. It is also complained that the general charge placed the burden of proof on the defendant warehouseman to show itself to be free from any negligence, rather than placing the burden of proof, after showing the unprecedented and unpredictable flood, on the plaintiff to show negligence contributing to the act of God in producing the damage.

It does not seem to the writer that the technical question of the burden is material in this case, for the reason that all the evidence as to what the defendant did, after finding the flood was taking on an unprecedented stage, was presented in the case. The authorities are not in accord as to which party has the technical burden of proof in this situation, after a showing that the flood caused the damage. Some of the courts hold that upon proof that the damage was caused by an unprecedented and unpredictable flood, an absolute defense to the damage to the goods is established. Other courts hold that after proof that an unprecedented and unpredictable flood caused the damage to the goods the burden of proof shifts to the plaintiff to show that the warehouseman himself was guilty of some negligence which contributed to the loss. Prior to the enactment of the statutes, under which this action is brought, undoubtedly the law was as stated in

the case of *Railroad Co.* v. *Reeves,* 10 Wall., 176, at 179:

"We are of opinion, then, that both the refusal to charge as requested and the charge actually given are properly before us for examination. As regards the first, we will only notice one of the rejected instructions, the fourth. It was prayed in these words:

" 'When the damage is shown to have resulted from the immediate act of God, such as a sudden and extraordinary flood, the carrier would be exempt from liability, unless the plaintiff shall prove that the defendant was guilty of some negligence in not providing for the safety of the goods. That he could do so must be proven by the plaintiff, or must appear in the facts of the case.'

"It is hard to see how the soundness of this proposition can be made clearer than by its bare statement. A common carrier assumes all risks except those caused by the act of God and the public enemy. One of the instances always mentioned by the elementary writers of loss by the act of God is the case of loss by flood and storm. Now, when it is shown that the damage resulted from this cause immediately, he is excused.

"What is to make him liable after this? No question of his negligence arises unless it is made by the other party. It is not necessary for him to prove that the cause was such as releases him, and then to prove affirmatively that he did not contribute to it. If, after he has excused himself by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it."

And the court thereupon reversed the judgment for refusal to give the charge above quoted.

This rule of procedure is quoted with approval in the case of *B. & O. S. W. Rd. Co.* v. *Wuest,* 6 Ohio App., 127. This case, however, was decided subsequently to

the enactment of the statute, and the rule announced in the *Reeves case, supra,* was followed.

It is suggested that Section 8464, General Code, changes this rule of law by the provision "the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

It is claimed that the trial court submitted the case to the jury on the theory that this section placed on the warehouseman the burden of going forward in proving no negligence contributing to the damage, in addition to proving the act of God.

The writer is of opinion that a lawful excuse was shown when defendant showed the act of God caused the damage, and that if the negligence of the warehouseman contributed to the damage, the burden was on the plaintiff to go forward with this proof of negligence, which contributed to the *vis major* in causing the damage. However, as above stated, the charge on the burden of proof is not vital in this case, for the reason that all of the pertinent facts were presented to the jury for its consideration.

It will be noted that the court in the *Reeves case, supra,* approved the phrase: "That he [the warehouseman] could do so must be proven by the plaintiff, or must appear in the facts of the case." If it does appear in the evidence of the case that there was evidence of negligence which contributed to the *vis major* in causing the damages, it would be for the jury as a part of the evidence in the case.

It is next claimed that the court erred in refusing defendant's special charge No. 10, which is:

"I charge you that the burden of proof is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence of the defendant was the direct and proximate cause of the damage to plaintiff's canned goods."

This charge seems to us to be an ordinary charge in a negligence case, and does not present the issues

under the statute, and it was not error to refuse the charge.

Defendant's next complaint is that the refusal of the court to give special charge No. 12, requested by it, constituted prejudicial error. This charge presents inconsistent propositions and was properly refused. Special charge No. 13 eliminates the proposition of the defendant's negligence, contributing to the flood waters, causing the damage. The charge is, therefore, objectionable for that reason.

Complaint is made against the refusal of the trial court to give defendant's special charge No. 14, which is:

"If you find from the evidence that the damage to plaintiff's canned goods in this warehouse of the defendant would have resulted solely and proximately from this flood, regardless of whether or not the defendant had been negligent in some respect, then I charge you that the defendant is not liable in this case and you will return a verdict for the defendant."

This charge was a proposition of law applicable to the issues in the case and was good law. Certainly, if the act of God would have caused the damage without reference to any negligence on the part of the defendant, there would be no liability for the damage. The charge requested to the effect that if the damage to the canned goods would have resulted solely and proximately from this flood, notwithstanding anything defendant may have done or may not have done, defendant would not be liable, is certainly a correct rule of law. It is suggested that this charge is included in some other special charges, but our attention has not been called to the other special charges, wherein it is contained, and we are not able to find them.

The refusal to give a proper special charge is reversible error. The failure to give defendant's special charge No. 14 constituted reversible error.

Complaint is made that the trial court refused to

give special charge No. 8, which had to do with the ordinances of the city of Cincinnati, concerning the width of aisles and cross-aisles, to be maintained in warehouses, and which provides a penalty for the violation thereof. The evidence was that the defendant had maintained the aisles and cross-aisles in accordance with the ordinances, and thereupon asked the court to charge as in special charge No. 8, as follows:

"I charge you that the defendant had no duty to move plaintiff's canned goods into the aisles or cross-aisles on the third, fourth or fifth floors of its warehouse, and you cannot find negligence on the part of the defendant because it failed to do so."

This correctly stated the law applicable. There is no duty on the part of the defendant to violate the ordinances in order to avoid negligence in the care of the plaintiff's goods. This special charge No. 8 stated a correct proposition of law applicable to the issues in the case, and the court committed error, prejudicial to the appellant, in refusing the same.

It is also complained that the court erred in refusing to submit to the jury defendant's interrogatory No. 3, which was as follows:

"If your answer to interrogatory No. 2 is 'No,' then state from the evidence what the defendant, after it should have reasonably anticipated, in the exercise of ordinary care, that this flood would reach the second floor of the warehouse, did or failed to do which constituted the failure to exercise such care in regard to plaintiff's canned goods as a reasonably careful owner of similar goods would exercise under the same or similar circumstances, and which failure directly and proximately resulted in the damage to plaintiff's canned goods."

This interrogatory does no more than test the jury as to what negligent act contributed to the *vis major* in causing the damage. If the interrogatory in the case of *Davison* v. *Flowers,* 123 Ohio St., 89, 174 N. E.,

137, was correct and permissible, certainly defendant's interrogatory No. 3 should have been submitted in this case. The answer to this interrogatory might well have been inconsistent with the general verdict, in which case, a general verdict would fail. It was but a request for the jury to find wherein the defendant failed in its duty to properly care for the safety of the goods under the circumstances. The answer may have involved some impossible proposition, which could not have been reconciled with contributory negligence. Under the authority of *Davison* v. *Flowers, supra,* the interrogatory should have been given.

Complaint is made that the judgment is excessive. It does appear that the plaintiff was allowed damages to the goods, and at the same time damages for restoration of the goods to a saleable condition. This has the appearance of a duplication, which it may be possible to explain.

These considerations would require a reversal of the judgment.

However, the majority of the court is of opinion that there is no evidence on which the defendant could be held negligent in the case, and the trial court, therefore, erred in overruling the defendant's motion for a directed verdict in its favor.

The judgment will be reversed and final judgment for the defendant will be entered in this court.

*Judgment reversed.*

Matthews and Ross, JJ., concur in the judgment.